ICT INSURANCE COMPANY, Appellant,

v.

Rex B. GUNN, Appellee.

No. 3420.

Court of Civil Appeals of Texas.

Waco.

Oct. 11, 1956.

Rehearing Denied Nov. 1, 1956.

Blakeley & Williams, Houston, J. Alex Blakeley, Dallas, for appellant.

Dawson & Dawson, Corsicana, Gallagher, Francis, Bean, Wilson & Berry, Dallas, for appellee.

TIREY, Justice.

This is a compensation case. (The main point is, did claimant show good cause for delayed filing of claim?) It does not yield to a short statement. It is without dispute that appellee suffered an injury on the 29th day of June 1954, while he was employed, but he did not file notice of injury and claim for compensation until June 28, 1955.

Appellee testified in part to the effect that immediately after he sustained an injury on June 29, 1954 he felt immediate pain in his lower back and pain shot down his right leg; he told the driller he was injured and sat down for an hour or so immediately afterwards; returning home from work he told the driller he was going to the doctor for his injury and he went home and went to bed but could not sleep because of the pain in his back; the following day he went to see Dr. Paul Mitchell and went back to Dr. Mitchell a day or so later and the doctor gave him a heat treatment and pills for pain and he did no work whatever from the day after his injury until sometime in August, 1954; that about two days after the second visit to Dr. Mitchell, Dr. Mitchell put the plaintiff in the hospital, where he stayed six days "in traction"; that from the time

he got out of the hospital until he returned to work some time in August, the appellee applied traction himself at home to ease the pain; that he consulted Dr. Mitchell twice more immediately after leaving the hospital in July, 1954; that for the next year after his injury the appellee worked only about two weeks for Liberty Work Over & Drilling Company; that he did no further public work until December 1954, when he again worked ten days or two weeks for another drilling contractor; that his next public work was in March 1955, when he again worked for another drilling contractor for about two weeks; that in May 1955 he again worked about two weeks for another drilling contractor; that the above described public work of at most eight weeks was all the public work the appellee did from the date of his injury on June 29, 1954 to June 15, 1955; that during such time he had more than usual trouble with his back on three different occasions, each period lasting from one to two weeks; the first trouble was in December 1954; on that occasion he went to a masseur for treatment; that approximately two months later, apparently in about February, 1955, he again suffered a period of unusual trouble with his back, and repeated the treatment from the masseur; that in May 1955 he again had trouble with his back, this time with additional pain of muscle spasm or cramps, which was something that had not occurred previously. Appellee further testified to the effect that he went to a chiropractor for relief of the severe pain in May, 1955, but that the treatment gave him no relief, and during such period, in May 1955, he had a lot of muscle spasms every night; that on June 15, 1955 he again consulted Dr. Mitchell, who advised him to see a lawyer. Appellee described his present pain and disability at the time of testifying as a pain in his lower back and down the back of his right leg to a point below the calf of his right leg, with muscle spasms or cramps when resting at night; that since the first of June 1955 he had been unable to do any of the kind of work

he had formerly done, although he had done what he described as light work for a driller during the two months preceding the trial.

Appellee further testified to the effect that during the three eight hour shifts he worked after his injury on June 29, 1954, and before he consulted a doctor on July 1, 1954, his injury was extremely painful all the time he worked; that the pain he was suffering at the time of the trial was no more severe than the pain suffered by him immediately after his injury and while he was in the hospital; that he suffered pain in his back after returning to work for Liberty Work Over & Drilling Company, and also subsequently while working for Coffield and Guthrie; that the reason he went to a masseur for adjustments during the year following his injury was that he knew his back was injured and was hurting; that the pain he suffered immediately after his injury was worse than the pain he was suffering at the time of the trial; that Dr. Mitchell never told plaintiff that he was well or recovered from his injury, and during the year following his injury he had pain in his back when he did heavy work.

He testified by deposition to the effect that from June 29, 1954 to May 1955 there were two or three different times when he had an opportunity to go to work when he could not take the job because of the condition of his back, and that each time the disabling condition of his back would last a couple of weeks; that he quit going to his family physician and started going to a masseur because Dr. Mitchell was not doing his back condition any good and the masseur was; however, he did testify to the effect that one reason he did not go back to Dr. Mitchell was that he did not think his back needed attention; he said he had pain in his back at all times from the time he got out of the hospital in July 1954 to May 1955; that the pain interfered with his activity; that he knew during that time that his back was not normal and

that there was something wrong with his back and that at times it interfered with his work; that the condition in his back continued right up until May 1955; that his doctor never told him his condition was not serious or that he would recover; that during the year following his injury he went to a masseur for treatment approximately twenty-one times; that there was never any period of time from the date of his injury up until May 1955 that his back felt like it should; that at any time during the year following his injury he tried to do heavy work or any lifting that his back hurt; that during the year after his injury he knew at all times and every time he worked that he could not do the kind of work he had been doing before his injury.

Testimony was further tendered by the appellee to the effect that in recent years he had followed two pursuits, farming and oil field work; that when he was not busy on the farm he would do oil field work in the immediate vicinity and that he had put in a crop every year since 1948; that appellee had not received an injury prior to June 29, 1954 which prevented him from doing his regular work; that prior to June 29, 1954 appellee was in good health; that about 2:00 A.M. he sustained an injury by having excessive weight suddenly thrown upon his body while in a bending position; he immediately experienced pain in his back and right leg, however he continued on the job doing heavy work for fourteen hours and returned for the next shift; at no time up to the present time was there ever any marks, bruises, lacerations, broken bones or anything visible to the eye in, upon or about appellee's body; according to appellee's testimony it was in June 1955 that he had for the first time muscle spasms in his leg; when appellee consulted his physician on July 1, 1954 the physician examined him but did not prescribe medicine on the first visit; on the next visit of appellee to his doctor appellee was placed in the hospital for approximately six days in traction, which treatment improved appellee's condition; it appears from Dr. Mitchell's

testimony that he did not realize that the injury of appellee was a serious one and did not expect any permanent difficulty and on his last visit in July 1954 did not prescribe any further treatment to appellee and told appellee to go back to work; that appellee said that for a period of two weeks prior to his return to work he suffered no pain; that he returned to work early in August 1954 for the same employer at the same work, hours and days and for the same wages; that he voluntarily changed his employment to Coffield and Guthrie Drilling Company and the same type of work; that he continued his regular farm crop in 1954 and put in a new crop in 1955; that he followed this same work pattern after his injury to June 1955 of farming and oil field work and did all the work that Coffield and Guthrie Drilling Company had for him. Appellee testified to the effect that during the year following his injury he had only two or three spells with his back, each of which lasted one to two weeks; that the last spell immediately before June 15, 1955 was much worse, involving loss of weight and muscle spasms of his leg; that between his visit to Dr. Mitchell in July 1954 and his visit to Dr. Mitchell on June 15, 1955, following this bad spell, he consulted no medical doctor and needed no medical treatment, although he did see a masseur on several occasions and a chiropractor once; that when Dr. Mitchell saw him limping in he discussed his condition with him and then for the first time advised him that he had a serious injury; that immediately on that date appellee contacted lawyers for the first time, who prepared notice of his injury and filled out claim for compensation for such injury and mailed it on June 27, 1955 and this notice was received by the Industrial Accident Board on June 28, 1955, which was the first notice given to the Industrial Accident Board of the injury. Medical testimony was tendered to the effect that appellee's type of injury is often progressive in nature and becomes worse with time; Dr. Mitchell compared

the x-rays taken on July 1, 1954, immediately after the injury, with x-rays taken in January, 1956, shortly before the trial, and confirmed that appellee's bone condition and injury had become progressively worse in the intervening time. This doctor's view was further confirmed by the physical finding that the calf of the right leg had atrophied or become smaller than the calf of the left leg. Dr. Mitchell further testified to the effect that appellee had a high level of pain tolerance but was within the normal limits of such pain tolerance. Appellee further testified to the effect that when he was not performing his work with the drilling companies that he was working on the farm and that he had a crop in 1954 and in 1955; that on three different occasions he had more trouble with his back than he had been having and that each of these lasted from one to two weeks and that the first one of these occurred in December 1954, and that when he had this difficulty he went to a chiropractor or a masseur; that such treatment helped his back some; that the last one of these spells happened in May 1955; that it bothered him for about the same number of days, but that he started having muscle spasms or cramps at night; that he went back to the chiropractor and the chiropractor helped him some but he didn't seem to get completely over it as he had before; that his trouble affected his leg in a different way on this last occasion. He testified specifically: "A. Well, these muscle spasms or cramps, I just had a lot of them almost every night, or every night I would have two or three muscle spasms, and I could get my leg in a certain position and I would have these cramps. * * * I had never had exactly that type of trouble with it. * * * I had had some pain in my right leg but it was always in my hip joint or knee joint. It was always in the joint of my knee, but I had never had muscle spasms like that before. * * * I talked to Dr. Mitchell and he told me that I probably had a serious condition and that I should consult a lawyer. * * * Well, after I had the conference with the doctor, I realized I had a serious condition and I immediately tried to get in touch with lawyers. * * *

"Q. Please state whether or not you had ever realized before that occasion that you were seriously injured? A. No sir, I had not.

"Q. Why didn't you realize it? A. Well, I was doing my work all right and I just hadn't realized it was serious and would continue to give me pain.

"Q. What did you think all during that year we have been talking about? A. I thought I would get over it. I thought it was probably just a strained muscle, or something of that type, and it wasn't serious and wouldn't be continuous. * * *

"Q. You did a lot of work between the time you got out of the hospital in '54 and up to May of this year, is that right? A. Yes, sir. * * *

"Q. How do you know you didn't hurt your back on some of these jobs that you were working on after you got out of the hospital? A. Well, I could tell by the way my back felt. * * *

"Q. Then your back was bothering you all the time, wasn't it? A. Some, yes, sir.

"Q. Well, now, some, it is either bothering you or it isn't? A. It was bothering me, yes, sir; but it wasn't where I couldn't go."

At the conclusion of the testimony the court overruled defendant's motion for instructed verdict, and the jury found substantially (1, 2, 3 and 4) that appellee sustained an injury to his back on June 29, 1954 and that such injury was accidental and in the course of his employment and it resulted in total incapacity to labor; (5) that appellee's total incapacity to labor began on June 15, 1955; (6) that it is permanent and (7) it was not temporary; (9) that appellee has not sustained and will not sustain partial incapacity to labor

as a natural result of the injuries he received on June 29, 1954; (15) that there was an employee of the same class as appellee who worked substantially the whole of the year immediately preceding June 29, 1954 in the same or a similar employment as that engaged in by appellee at the time of his injury; (16) that the average daily wage or salary that an employee of the same class worked substantially the whole of the year immediately preceding the date of the injury in the same or similar employment earned the amount of .$13.28; (17) that the average weekly wage of appellee during the year of June 29, 1953 to June 29, 1954 was $66.40, and (18) that appellee would suffer manifest hardship and injustice unless his compensation was paid in one lump sum rather than weekly installments; (19) that appellee reasonably believed until the time that his claim for compensation was filed that the injury received by him on June 29, 1954 was not serious and would not disable him; (20) that appellee failed to file such claim on account of such belief that his injury was not serious and would not disable him; (21) that a reasonably prudent person would, under the same or similar circumstances, by reason of such belief, have delayed the filing of his claim until June 28, 1955; (22) that the injury to the plaintiff's right foot received by him in August 1955 from a stalk cutter has not contributed and will not contribute to appellee's incapacity to labor; (24) that the injury received by appellee to his right foot by the stalk cutter was not the sole cause of his incapacity to labor.

The court overruled defendant's motion for judgment non obstante veredicto and granted plaintiff's motion for judgment on the verdict. In the judgment we find this recital: "Under the pleadings, evidence, stipulations and verdict of the jury filed herein, the court is of the opinion that plaintiff, Rex B. Gunn, is entitled to recover judgment against defendant ICT Insurance Company * * *, for the payment of compensation for the full period of 401 weeks from and after June 15, 1955 at the rate of $25.00 per week with interest thereon at the rate of 4 per cent per annum on all past due installments of compensation from maturity until paid and upon the present value of all future installments until paid, the total of such sums being due and payable in one lump sum * * *," and decreed accordingly, and fixed the interest of the attorneys in the award according to law. Defendant seasonably filed his first amended motion for new trial and, it being overruled, perfected its appeal to this court. The decree is assailed on four points. They are substantially: (1) The court erred in overruling appellant's motion for instructed verdict and its second amended motion for judgment non obstante veredicto and its first amended motion for new trial and in submitting special issues Nos. 19, 20 and 21 to the jury, because the evidence shows conclusively as a matter of law that no good cause existed for the delay in filing claim for compensation, or in the alternative, the evidence was clearly insufficient to support such finding; (2) the court erred in submitting special issues Nos. 19, 20 and 21 because appellee judicially admitted in pleadings on which he went to trial that his total disability began on the date of his injury and was thereafter permanent and the change in plaintiff's trial petition, made by interlineation after the trial began, was without agreement or the consent of appellant's counsel, or in the alternative, the action of the court in refusing to recognize such judicial admission and act accordingly amounted to an enforcement by the court of an alleged agreement of counsel admittedly not reduced to writing, in violation of Rule 11, Texas Rules of Civil Procedure, and also in violations of Rules 62, 63, 64 and 65, T.R.C.P.; (3) the court erred in submitting issue No. 21 because said issue assumed the existence of the disputed fact that appellee believed that his injury was not serious and disabling, and thus constituted a comment upon the weight of the evidence, and (4) the court erred in entering judgment for workmen's com-

pensation benefits for the full period of 401 weeks after June 15, 1955, when the jury found that the injury occurred on June 29, 1954, for the reason that, as a matter of law, compensation benefits for total disability can be recovered only for a period of 401 weeks after the date of injury rather than after the date the disability commenced.

Before discussing each of appellant's points, we think it is pertinent for us here to say that as a reviewing court, it is our duty to consider the evidence and the inferences properly to be drawn therefrom in the light most favorable to the party obtaining the verdict, and it is our duty in considering controverted issues of fact to accept as true that testimony which tends to support the verdict. 3–B Tex.Jur. pp. 370 and 372. Moreover, "Where the facts are controverted, or are such that different inferences may be reasonably drawn therefrom, an issue of fact is raised; it is only where the evidence is harmonious and consistent, and the circumstances permit of but one conclusion, that the question becomes one of law for the determination of the court. An issue of fact is raised 'if, discarding all adverse evidence, and giving credit to all evidence favorable to the plaintiff, and indulging every legitimate conclusion favorable to the plaintiff which might have been drawn from the facts proved, a jury might have found in favor of the plaintiff.'" (Citing cases) See Olds v. Traylor, Tex.Civ.App., 180 S.W.2d 511, 514, points 8 and 9, writ ref. Moreover, " 'It was the jury's province to weigh all of the evidence, to decide what credence should be given to the whole or to any part of the testimony of each witness. "The jury were the judges not only of the facts proved, but of the inferences to be drawn therefrom, provided such inferences were not unreasonable." ' " See Burt v. Lochausen, 151 Tex. 289, 249 S.W.2d 194, at page 199, point 6. No rule is better settled than the one to the effect that if there is evidence of probative value

to sustain the findings of the jury, the appellate court is bound by such findings. See Lynch v. McLendon, Tex.Civ.App., 283 S.W.2d 88, point 3 (no writ history) and cases there collated.

Returning to a discussion of appellant's Point 1, it is our view that the application of the rules of law heretofore quoted require us to hold that the trial court did not err in refusing the instructed verdict, nor did it err in overruling appellant's second amended motion for judgment non obstante veredicto, and did not err in overruling appellant's first amended motion for new trial, and did not err in submitting special issues Nos. 19, 20 and 21, because these issues were tendered by the pleadings and the evidence, and we think the evidence is ample to sustain the jury's answers thereto.

Viewing the testimony as a whole, we do not think our view is in conflict with the rule announced in Sandage v. Traders & General Ins. Co., Tex.Civ.App., 140 S.W.2d 871 (writ ref.), or in Texas Employers Ins. Ass'n v. Portley, 153 Tex. 62, 263 S.W.2d 247. We have read carefully each of the foregoing opinions and we think that a careful reading of each case shows that the controlling factual situation is much different. In the case at bar claimant had no indication that he had received an injury except that he had severe pain. There were no bruises on the back; there were no lacerations; that there was no swelling and no knot in his back; his physician did not advise him that he had suffered a serious injury and he got better from time to time. By wearing a brace he was able to work, and this entire record shows, we think, that the claimant actually believed that his injury was trivial and not compensable because he was working substantially all of the time that he could get outside employment in addition to doing his regular farm work. These conditions did not exist in the Sandage case, nor in the Portley case, supra. Our Supreme Court in Harkey v. Texas Employers Ins. Ass'n, 146 Tex. 504,

208 S.W.2d 919, 921 made this statement of the rule: "There are several distinct factual bases for good cause under Art. 8307, sec. 4a, R.S.1925. * * * Claimant's belief in good faith that his injuries are not serious is one, provided a reasonably prudent person in the same or similar circumstances would have delayed filing his claim. * * * And while such belief continues, the fact that almost constant pain exists does not affect the issue; since pain and suffering are not compensable. * * * Advice from a physician that his injuries are not serious constitutes good cause for failure to file a claim within the prescribed time, provided the claimant, in the exercise of ordinary care, believes and relies upon that advice." It is our view that the factual situation here brings the claimant within the above rule, and the jury so found. As we understand our Supreme Court in the Portley case, the rule stated in the Harkey case has not been changed. See also Hawkins v. Safety Casualty Co., 146 Tex. 381, 207 S.W.2d 370.

Appellant's second point is:

"The Trial Court erred in overruling Appellant's Motion for Instructed Verdict and Appellant's Second Amended Motion for Judgment Non Obstante Veredicto and Appellant's First Amended Motion for New Trial and in submitting special issues No. 19, 20 and 21 to the jury because Appellee judicially admitted, in the pleadings upon which he went to trial, that his total disability began on the date of his injury and was thereafter permanent, and the change in Plaintiff's trial petition made by interlineation after the trial began was without agreement or consent of Appellant's counsel, or in the alternative, the action of the court in refusing to recognize such judicial admission and act accordingly amounted to an enforcement by the Court of an alleged agreement of counsel admittedly not reduced to writing, in violation of Rule 11, Texas Rules of Civil Procedure, and also in violation of Rules 62, 63, 64 and 65, Texas Rules of Civil Procedure, relating to amendment of pleadings."

In appellant's brief we find this statement:

"Plaintiff's First Amended Original Petition, upon which he went to trial, alleged that 'as a result of said injuries and the pain and suffering incident thereto plaintiff has been caused to suffer total disability and incapacity from the performance of labor, within the definition and meaning of the Workmen's Compensation Law of the State of Texas [Vernon's Ann.Civ.St. Art. 8306 et seq.], since the date of his accident and these conditions are permanent.' At some point in the trial, after the selection of a jury, the exact time being uncertain, the underlined portion of the above quotation from Plaintiff's First Amended Original Petition was changed by interlineation to strike out the underlined portion and write instead 'since on or about June 15, 1955'."

■ . At the hearing on appellant's second amended motion for judgment non obstante veredicto appellant undertook to show that the interlineation complained of was made without its consent. Much testimony was tendered on the question as to whether the interlineation was made in open court with the consent of attorneys for appellant. The court, after hearing the testimony, made this finding: "In this particular case, when it was called for trial and all parties announced ready, the court requested of counsel in open court, for them to present to the court any exceptions or preliminary matters which they might have in mind. Counsel at the time stated that there were none. I have no personal recollection of the matter in connection with these interlineations. No request was made to this court for a trial amendment. No objections were made to the court at any time

to the interlineations, and in preparing the charge the court had before it the trial amendment as it was then existing. Under the evidence in this case, the court is of the opinion that all counsel agreed to the interlineations which are found in the pleadings; the case was tried upon this theory. The court is further of the opinion that the interlineations, as they exist, in no wise took counsel for defendant by surprise, or put any added burden upon him." We have carefully read all of the evidence tendered on the point, and it is our view that there is abundant evidence of probative value in support of the court's finding. See Watson v. Texas Indemnity Ins. Co., 147 Tex. 40, 210 S.W.2d 989. Absent the court's finding we think we should say that the entire record shows that the case was tried within the provisions of Rule 67, T.R.C.P. We think it pertinent here to state that the rule announced by our Supreme Court in Scott v. Gardner, 137 Tex. 628, 156 S.W.2d 513, 515, points 1 and 2, 141 A.L.R. 50, is applicable here. "In the absence of special exception the petition will be liberally construed in the pleader's favor and to support the judgment." Point 2 is overruled.

Appellant's third point is: "The Trial Court erred in submitting Special Issue No. 21 to the jury over Appellant's objection that said issue assumed the existence of the disputed fact that Appellee believed that his injury was not serious and disabling, and thus constituted a comment upon the weight of the evidence." Pertinent to a discussion of this point we quote issues Nos. 19, 20 and 21 of the court's charge. They are:

"19. Do you find from a preponderance of the evidence that Rex B. Gunn reasonably believed, until the time that his claim for compensation was filed on June 28, 1955, that the injury received by him on June 29, 1954, if any, was not serious and would not disable him?

"If you have answered Special Issue No. 19 by 'yes' and only in that event, then answer the following:

"20. Do you find from a preponderance of the evidence that the plaintiff, Rex B. Gunn, failed to file such claim on account of such belief, that his injury was not serious and would not disable him, if you have so found?

"Answer Yes.

"If you have answered Special Issue No. 20 by 'yes,' and only in that event, then answer the following:

"21. Do you find from a preponderance of the evidence that a reasonably prudent person would, under the same or similar circumstances, by reason of such belief, have delayed the filing of his claim until June 28, 1955? Answer 'yes' or 'no.'

"Answer Yes."

Appellant objected to Issue No. 21 because it "assumes the existence of a disputed fact, to-wit, that plaintiff had a reasonable belief that his injury was not serious and would not disable him, and thus constituted a comment upon the weight of the evidence." It is our view that the objection is wholly without merit. It is well settled in Texas that the charge must be construed as a whole and that when you do so it is clear that Special Issue No. 21 relates back to and is founded upon Issue No. 20. Our Supreme Court had before it a similar situation in Texas Employers Ins. Ass'n v. McKay, 146 Tex. 569, 210 S.W.2d 147, 149, and there we find this statement: "We find it unnecessary to review that holding, since we are satisfied from the very terms of the charge itself, considered as a whole, that the error in Special Issue No. 19 was not one which '* * * was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case * * *'. Rule 434, Texas Rules of Civil Procedure. In fact, viewing the

charge as a whole, we think it an unreasonable and quite unlikely conclusion that the jury was misled by Special Issue No. 19." We think the foregoing statement is applicable here and we think appellant's contention that the issue confused or misled the jury is unreasonable. The opinion of the Supreme Court is clear and we think the statements in that opinion are applicable and controlling here and that there was no error in the court overruling appellant's objections.

Appellant's fourth point is substantially that the court erred in entering judgment for workmen's compensation benefits for the full period of 401 weeks after June 15, 1955, when the jury found that the injury occurred on June 29, 1954, for the reason that, as a matter of law, compensation benefits for total disability can be recovered only for a period of 401 weeks after date of injury rather than after date disability commenced. Appellant grounds this point on the provisions of Sec. 11 of Art. 8306, Vernon's Ann.Civ.St. as amended, and the decision of the Supreme Court in Texas Employers Ins. Ass'n v. Guidry, 128 Tex. 433, 99 S.W.2d 900 (Tex. Com.App., op. adopted by S.Ct.). Sec. 11 in part provides: "The period covered by such compensation shall be in no case greater than three hundred weeks; provided that in no case shall the period of compensation for total and partial incapacity exceed four hundred and one weeks from the date of injury." We have carefully considered the foregoing statute and the above decision and think that they support appellant's contention in this behalf and so far as we have been able to find our Supreme Court has not changed its interpretation of the statute there announced. In the case at bar no complaint was made to the judgment entered by the trial court at the time it was entered, nor was such error called to the attention of the court below by motion, and the point was raised for the first time after the cause reached this court. It is appellant's position here that the error in the judgment is fundamental and that the record shows on its face that the judgment entered by the trial court did not correctly apply the law to the facts as found by the jury. Appellant also relies on the doctrine announced by our Supreme Court in Lane v. Fair Stores, 150 Tex. 566, 243 S.W.2d 683, 685. In the foregoing case the court had before it a question of fundamental error and with reference thereto the court announced this rule: "If it requires an examination of the statement of facts to reveal error, then it is not fundamental error. Insurors Indemnity & Insurance Co. v. Associated Indemnity Corporation, 139 Tex. 286, 162 S.W.2d 666, and cases there cited." In Krottinger v. Marchand, Tex.Civ.App., 252 S.W.2d 217 (no writ history) the court, in disposing of fundamental error, held that before a court may reverse a case based upon fundamental error, it must make its finding solely from examination of pleadings, judgment and other records of the case, without assistance of the statement of facts, and cited White v. Glengarry Oil Co., 137 Tex. 626, 156 S.W.2d 523 (Tex.Com.App., opinion adopted), and 3–B Tex.Jur. 34, sec. 683. An examination of the pleadings and the judgment, which contains the findings of the jury, discloses the error in the award. It is without dispute that appellee was injured on June 29, 1954 and that his total disability began on June 15, 1955, all of which is found in the findings of the jury. Appellee claims that appellant is not entitled to urge fundamental error apparent on the face of the record under the doctrine announced in a concurring opinion by Chief Justice Alexander in Ramsey v. Dunlop, 146 Tex. 196, 205 S.W.2d 979, 982.

Rule 374, amended by order of March 31, 1941, now provides:

"The motion for new trial, when required to be filed under these rules, shall constitute the assignments of error on appeal or writ of error. A ground of error not distinctly set forth in the motion for new trial, in cases

where a motion for new trial is required shall be considered as waived. Complaint of the action of the court on all matters arising under circumstances where no motion for new trial is required by these rules, if relied upon on 'appeal, shall be included in the statement of points in the brief as hereinafter provided, and in such cases no assignments' of error shall be necessary."

Rule 374, as originally adopted, is changed only in this respect: The period at the conclusion of the original rule (which was the word "provided") has been changed to a comma and at the end of the original rule there has been added the words "and in such cases no assignments of error shall be necessary." In view of appellee's contention we have reviewed very carefully the opinion of our Supreme Court in Ramsey v. Dunlop, supra, and as we understand the majority opinion in that case, it does not support appellee's contention. The majority opinion, after comprehensively reviewing the history of "fundamental error", summarized as follows:

"After our appellate courts thus for 89 years continued to pass on errors unassigned but apparent of record, in the face of a statute which declared that all errors not distinctly specified by assignment in the trial court should be considered as waived, must we now hold that our courts of civil appeals have no authority to consider such errors because Art. 1837 has again been repealed by the substantial reenactment of Art. 1844 in the form of Rule 374, T.R.C.P.? As to errors that are truly fundamental, we think the answer must be No."

It is true that Chief Justice Alexander, in his concurring opinion, makes his position very clear, but as we understand the proceedings of the Supreme Court, no other member of the court concurred in the specific views stated by the Chief Justice on which appellee relies. So going back to the pronouncement made by our Supreme Court in Lane v. Fair Stores, supra, we are of the view that the 'Supreme Court is still in accord with the majority opinion in Ramsey v. Dunlop, supra. The Legislature has not seen fit to change the provision of the Article under consideration.

 Because of the views heretofore expressed, we think that the judgment of the trial court must be reformed, and it being without dispute that 50 weeks elapsed from the date of injury to the date of appellee's total permanent disability, that the judgment entered by the trial court must be credited with 50 weeks at $25 per week, or a total credit of $1,250, and the judgment entered by the trial court is reformed as here indicated, and, as reformed, is in all things affirmed. Under the power granted to us under Rule 448, T.R.C.P., we think good cause exists for taxing all costs of appeal against appellant, and it is so ordered. See authorities there collated.

Reformed and affirmed.