**TEXAS & PACIFIC RAILWAY COMPANY et al., Appellants,**

**v.**

**Mrs. H. L. DYSON et al., Appellees.**

**No. 5112.**

Court of Civil Appeals of Texas.

El Paso.

June 15, 1955.

Rehearing Denied July 6, 1955.

McDonald & Shafer, Odessa, Hill D. Hudson, Pecos, for appellants.

John J. Watts, Odessa, for appellees.

McGILL, Justice.

This is a railroad crossing case growing out of an accident which occurred in the city of Odessa, Ector County, Texas, on February 18, 1954. Billy Camp, the driver of the car in which H. L. Dyson was riding at the time of his death, sued the defendant Texas & Pacific Railway Company in cause No. 10442 in the District Court of Ector County, and Mrs. H. L. Dyson for herself and as administratrix of the estate of H. L. Dyson, and in behalf of her minor children Jerry Dyson and Teresa Dyson, and also in behalf of Mrs. M. C. Dyson, mother of the deceased, sued the railroad company in cause No. 10359 on the docket of said court. These causes were consolidated and tried as cause No. 10359. On answers to Special Issues the jury returned a verdict in favor of Mrs. H. L. Dyson for $25,000, in favor of Jerry Dyson for $11,400, in favor of Teresa Dyson for $13,200, and nothing in favor of Mrs. M. C. Dyson and Billy Camp. Judgment was rendered in accordance with such verdict.

The plaintiff Billy Camp has appealed on the sole point that the court erred in overruling his motion for a new trial, and in finding that there was no conflict between the jury's answer to Special Issue No. 32 and their answers to Special Issues Nos. 49 and 50.

Special Issue No. 32 and the answer thereto were:

"Special Issue No. 32: Do you find from a preponderance of the evidence that immediately before the occurrence of the accident the approaching train was plainly visible to a person of ordinary care, and was in hazardous proximity of such crossing? Answer 'yes' or 'no'. Answer: 'No'."

Special Issue No. 49 and the answer thereto were:

"Special Issue No. 49: Do you find from a preponderance of the evidence that as Bill Camp approached the railroad crossing immediately prior to the collision, he failed to keep that lookout which an ordinarily prudent person would have kept under the same or similar circumstances for trains approaching such crossing? Answer 'He did fail', or 'He did not fail.' Answer: 'He did fail.'"

Special Issue No. 50 and the answer thereto were:

"Special Issue No. 50: Do you find from a preponderance of the evidence that such failure, if any, of the said Bill Camp to keep such a lookout as an ordinarily prudent person would have kept, if he did so fail, was a proximate cause of the collision in question? Answer 'Yes', or 'No'. Answer: 'Yes'."

We find no irreconcilable conflict between the answers to Special Issue No. 32 and the answers to Special Issues Nos. 49 and 50. The train may have not been plainly visible to a person of ordinary care, and yet if a lookout had been kept it may have been seen. By his failure to keep a lookout Camp deprived himself of the possibility of seeing the train, and thereby was guilty of negligence. This point is overruled.

The Railway Company's first point is that the Court erred in overruling its motion for judgment non obstante veredicto because the undisputed evidence in the case showed that the plaintiff Billy Camp and the deceased H. L. Dyson were engaged in a joint enterprise at the time of the accident, and that the jury having found Billy Camp guilty of negligence proximately causing the accident, such negligence is imputable to H. L. Dyson and his beneficiaries.

In answer to Special Issue No. 63 the jury found that at the time of the accident in question Billy Camp and H. L. Dyson were not on a joint enterprise. At the time of the accident the car of Billy Camp was occupied by the deceased, H. L. Dyson, and one Walter Carter, as well as Billy Camp. They were all members of a drilling crew and were coming in from work at the time of the accident. On alternate days the various members of the crew, including Dyson, would furnish their cars

and haul the whole crew. When Camp's car was used he paid for the gasoline, and when Dyson's car was used he paid for the gasoline. All of the occupants of the car had been working in the same crew, and following the custom of alternating their cars for use in going to and from work for some three weeks prior to the accident. If some member of the crew wanted to go to some particular place to be let out he would so advise the driver and the driver would accede to his request. The testimony of Walter Carter, appellee's witness, was substantially as follows:

On the day of the accident they were in Billy Camp's car, and Billy Camp and Dyson were members of the same drilling crew, of which Carter was the driller; that they all rode to and from work in the same car and alternated in the use of the cars, including Dyson's car; that on the occasion in question they were returning from work and had already let out two other members of the crew; that when a man wanted to go·somewhere to be dropped off he would advise the driver and be dropped off at that particular place; that if they, he or Mr. Dyson, had yelled to Camp to stop, Camp would have and could have stopped. This evidence was uncontroverted.

■■■ The rule as to what constitutes joint enterprise between occupants of a motor vehicle is thus stated in .65 C.J.S., Negligence, § 168(c), p. 814 quoted in Siratt v. Worth Construction Co., Tex.Civ.App., 263 S.W.2d 842, 845, reversed on other grounds, Tex., 273 S.W.2d 615:

" 'In order to constitute occupants of a conveyance joint adventurers, there must be not only joint interest in the objects and purposes of the enterprise, but also an equal right, express or implied, to direct and control the conduct of each other in the operation of the conveyance.' "

Here there is no evidence that any occupant of Billy Camp's car which he was driving had any right to direct or control his conduct in the operation of the car. Evidence that Camp would have stopped the car if one of the occupants had yelled to him to stop and that he would have dropped any occupant off where such occupant desired to be dropped off is no evidence of any of the occupants' control over Camp's operation of the car, or of any of the occupants' right to operate it. It would be just as logical to hold that a by-stander along the side of the road who hollered out to Camp warning him of the approach of a train had joint control of the operation of his car. To state such a proposition is to refute it. Therefore the negligence of Camp in the operation of the car we think cannot be imputed to Dyson.

■■■ The second point is that the court erred in overruling defendant's motion for new trial because of improper, prejudicial, and inflammatory argument of appellee's counsel. The argument complained of on the part of plaintiff's counsel is the following:

Speaking of lack of lookout on the part of the railroad employees:

"They just kept going on, going on, on, blind, blind, blind, with a disregard for humanity such as is seldom seen on this good earth."

In speaking on the question of speed of the engine he further said:

"But this is not a case of ordinary negligence. This is a case of no care, no care, no gentlemen, and they claim it is just one of those things that we couldn't avoid. No, I don't guess it is a case of cold blooded murder, but if they had done any of those things, it could have been avoided."

Appealing to the sympathy of the jury on the question of damage, and without any evidence whatever to support it, he further said:

"Who can say, and you have got to say under the charge of this Court, how much the money value of a good dad is to that little girl and that little boy who will never know a Santa Claus."

Again:

"Who is the party who was negligent—violated every standard of care. You know, your rights and my rights, and the rights of the world depends on seeing that somebody that does that pays for it."

We have read and carefully considered the entire argument of plaintiff's counsel. It is our conclusion that the argument considered as a whole is not improper and constitutes no ground for reversal. The particular portions complained of are legitimate as indicating counsel's view of the evidence in the case, and do not constitute any undue appeal to the sympathy of the jury as contended.

This point is overruled, and the judgment is affirmed.