Carlton P. WEBB, Administrator of the Estate of Howard H. Huffman, Appellant,

v.

Minnie Jo HUFFMAN et al., Appellees.

No. 6833.

Court of Civil Appeals of Texas.

Amarillo.

Jan. 26, 1959.

Rehearing Denied Feb. 23, 1959.

Strasburger, Price, Kelton, Miller & Martin, Dallas, Royal H. Brin, Jr., Dallas, of counsel, for appellant.

Calloway Huffaker and Harold Green, Tahoka, for appellees.

CHAPMAN, Justice.

This is a death action brought by Minnie Jo Huffman, appellee, for herself and as next friend for her minor children in which she sought damages for the death of her husband, Archie Edgar Huffman, who was killed on January 24, 1957, with his brother, Howard H. Huffman, with whom he was at the time riding. The car, owned and driven at the time by Howard H. Huffman collided with a truck. The defendants below, appellants here, were Madie Monk Huffman, individually and as community survivor of her deceased husband, Howard H. Huffman and Carlton P. Webb as administrator of the estate of Howard H. Huffman, deceased.

Appellee alleged that the death of her husband, Archie Edgar Huffman, was caused by the negligence of his brother, Howard H. Huffman, alleged various grounds of ordinary negligence and pleaded affirmatively that Archie and Howard were joint enterprisers and that Archie Huffman was not a guest at the time in Howard Huffman's car within the meaning of our "Guest Statute." Vernon's Ann.Civ.St. art. 6701b. She prayed for recovery in the amount of $100,000, half of said amount for the benefit of herself and half for the benefit of her two minor children, Jo Beth Huffman and Danny Edgar Huffman. The Huffman brothers' mother was living at the time of their demise, but she was not mentioned anywhere as a party to the suit and no amount of recovery was asked for her in the prayer.

The case was tried to a jury and the verdict rendered for $47,500, $12,500 for the deceased widow, Minnie Jo Huffman, and $16,000 and $19,000 respectively for the two minor children, Jo Beth and Danny Edgar. From such verdict the trial court rendered judgment in accordance. The case is before us upon five points of error, the first four going to the question of whether the Huffman brothers were joint enterprisers on the occasion in question and the fifth point raising the question of the fatal defect of parties in that the mother of Archie Huffman, a beneficiary under the death statute and therefore a necessary party, was not joined in the action. Because of their necessary and essential relationship the first four points will be discussed together.

In an effort to establish the relationship between the brothers of a joint enterprise appellee offered defendant, Mrs. Madie Monk Huffman, surviving widow of Howard H. Huffman, the driver of the death car, Mrs. G. I. Huffman, mother of the two named Huffman brothers, Mr. Royce Mears and Hal Jones.

Mrs. Minnie Jo Huffman testified in substance that back through the years Archie and Howard worked together on oil drilling crews and rode with each other to work, one taking his car one day and the other the next; that the week of the collision in question they took pillows, blankets, groceries and cooking utensils and were batching together in San Angelo while working on an oil rig near Bronte and sharing expenses of batching together; that Archie was a driller and Howard a "rough neck" or "backup man." She testified under questions from counsel that before going to San Angelo the brothers agreed between themselves they would share the expenses incident to living in San Angelo and in the transportation "backwards and forth," though we would consider the probative force of such testimony concerning transportation worth little when further examination developed the fact that in March before the trial in September she made a written statement that, "my husband did not mention what arrangements had been made between him and Howard for using the cars or buying the gasoline or anything about the use of cars." Then, in questions designed to prove the equal right of each of the brothers, expressed or implied to direct and control the conduct of each other in the operation of the conveyance she testified, "Well, when they come to the stop sign they knew to stop but if they suggested going somewhere the other was for it."

Royce Mears, a workman on the rig with the Huffman brothers testified the boys were "light housekeeping" together and working together. He undertook to testify to the custom of oil field workers in riding with each other, saying, "Well, at anytime that a car wasn't being operated safely or anything, well, anybody in the car, they could voice their opinion about it or call the driver down, what they thought about it, and usually they complied with it." On cross-examination he testified that sometimes they will slow down and sometimes they will not. He further testified:

"Q. And in the sum and substance of your testimony is, that you oil field people are courteous to each other in those respects, isn't that right? A. Yes, sir."

Over objection of appellant that it violated the "Dead Man's Statute" Article 3716, Mrs. G. I. Huffman, mother of the deceased boys testified when they left on Sunday the week of their deaths they took two pies from her house, took "a batching outfit" such as blankets, pillows and dishes, and that they got along well, "they go a lot together."

Hal Jones, an oil field worker who worked for Archie the last part of 1956 testified to arrangements whereby the four men working would take time about from Post to the job cite using each person's car every fourth day. He testified, "You can go ask a man to slow down if you want to, and they usually do what you ask them to, or if you see something they don't you can tell them about it." He went on then to explain that by seeing something they don't he meant stop signs, driving too fast, or a car coming from another direction and if he saw a car coming from another direction and he thought the driver didn't, he would tell him about it and expect him to heed the admonition. He further testified they tried to get him to work on the Bronte job with them and they would all three batch together and share expenses on room, food and on each of their three cars but that he decided not to go and he didn't know what the agreement was anytime after that conversation or what final arrangements were made between the brothers. With respect to the control those riding had over the driver he testified in part as follows:

"Q. If you were riding with one of them and you saw one of them going to run a stop sign, or something like that you felt like you had a right to say, 'No, sir, there is a stop sign.'? A. Yes.

"Q. That is just the same thing as riding with anybody else from day to day, isn't that the truth of the matter? A. Well, I would probably tell anybody.

"Q. Sure, if you are riding with me or your own brother or your father or anybody else you would, or even your boss, you would tell him there is a stop sign, wouldn't you? A. I sure would.

"Q. And that is really what you are talking about here, about telling each other what to do, etc. As long as that was your car and you were driving it that was your car? A. It was my car.

"Q. And you had absolute control of it, didn't you? A. Yes.

"Q. When these other crew members have ridden with you, do they have any privileges to ask you or direct you to do anything other than drive directly to and from work? A. If they want you to stop, if they want to get something or go by a certain place it is customary to do what they ask you to.

"Q. If they want you to go by a different route would you do that? A. If they think it is nearer, if they think it will benefit them, we do.

"Q. If you disagree you don't have to do it? A. No further driving, but it is customary.

"Q. It is customary to get along with your passengers, isn't it? A. Yes, sir.

"Q. As long as he is driving his own car he is the boss of it isn't he? A. Yes."

The issue submitted on joint enterprise was as follows:

"Do you find from a preponderance of the evidence, that at the time of and immediately before the happenings in question Archie Edgar Huffman and Howard H. Huffman were upon a joint enterprise?"

The following definition was given:

"In passing upon the above issue you are instructed that by the term 'joint enterprise' is meant the occupants of a conveyance are supposed to be on a joint enterprise where they have not only a joint interest in the object and purpose of the enterprise, but also an equal right, expressed or implied, to direct and to control the conduct of each other in the operation of the conveyance."

Though we do not follow the trial court's purpose in using the word "supposed" in the definition just quoted appellants did not raise any question in their brief concerning that part of the definition so it is immaterial to our discussion.

■■■■ The question that now presents itself is whether the testimony above related, and all other testimony in the case, established that the Huffman brothers were joint enterprisers on the occasion in question. It would extend this opinion entirely too long to quote all the testimony and we believe what we have quoted is representative of and is practically the same tenor as the other testimony on the question. From the above issue and under the authority of McCarty v. Moss, Tex.Civ.App., 225 S.W. 2d 883, 886 (writ refused) we believe the burden was upon appellee to establish by a preponderance of the evidence the relation-

ship of joint enterprise or else Archie would have occupied the status of his brother's guest. In the case just cited the trial court had instructed the verdict for the owner of the car against the occupant rider, McCarty, and he had appealed to the Austin Court of Civil Appeals. That court said, "We overrule appellant's second point, because he failed to establish that he was not being transported as Moss' guest without payment for such transportation, as a matter of law." The El Paso Court of Civil Appeals in Texas & Pacific Railway Co. v. Dyson, 282 S.W.2d 733, 735, has said: "The rule as to what constitutes joint enterprise between occupants of a motor vehicle is thus stated in 65 C.J.S. Negligence § 168 c, p. 814 quoted in Siratt v. Worth Const. Co., Tex.Civ.App., 263 S.W.2d 842, [844,] 845, reversed on other grounds 154 Tex. 84, 273 S.W.2d 615, 616." The Court in the Siratt case just mentioned said:

" 'As applied to occupants of a conveyance, the doctrine of joint enterprise not only requires joint possession thereof by the joint adventurers, but they must also have joint control and responsibility for its operation. Simensky v. Zwyer, 40 Ohio App. 275, 178 N.E. 422. * * *' El Paso Electric Co. v. Leeper, Tex.Com.App., 60 S.W.2d 187, 189.

" 'In order to constitute occupants of a conveyance joint adventurers, there must be not only joint interest in the objects and purposes of the enterprise, but also an equal right, express or implied, to direct and control the conduct of each other in the operation of the conveyance. * * *' 65 C.J.S. Negligence § 168, p. 814.

" '* * * a mere guest or gratuitous passenger riding with the operator of a conveyance by invitation is not engaged in a common or joint enterprise with the operator, and this is so notwithstanding the guest asks to be driven to a certain place, indicates the route to be taken, points out the dan-

gers to be encountered, or takes turns in driving, and notwithstanding both parties have certain plans in common, and a common destination; * * *.' 65 C.J.S. Negligence § 168, p. 824."

Our Supreme Court granted a writ in the Siratt case and reversed it on other grounds but Justice Griffin in the court's opinion said, "We agree with the holding of the Court of Civil Appeals that the jury finding that Siratt and Boyd Driver were engaged in a joint expedition is not supported by the evidence."

The Dyson case above mentioned is similar to our own in that it involved members of an oil drilling crew who alternated in furnishing their cars (with all members of the crew riding together), and in the testimony as to what authority those riding in the car had over the control of the driver. The court in the Dyson case said:

"Evidence that Camp would have stopped the car if one of the occupants had yelled to him to stop and that he would have dropped any occupant off where such occupant desired to be dropped off is no evidence of any of the occupants' control over Camp's operation of the car, or of any of the occupants' right to operate it."

We realize cases by Courts of Civil Appeals in this state leave the law in a state of confusion as to what facts are necessary to establish joint enterprisers and remove a claimant rider, seeking to recover from the driver or owner of the automobile, from the requirements of proof under our guest statute. But we feel more obligated to follow the reasoning in the cases of Raub v. Rowe, Tex.Civ.App., 119 S.W.2d 190, 192 (writ refused) and Rowan v. Allen, 134 Tex. 215, 134 S.W.2d 1022 (Tex.Com.App., opinion adopted by Sup. Ct.). The former is cited with approval by Judge Hickman in his opinion in the latter. In the Raub v. Rowe case, supra, the court was concerned with a proportionate share-the-expense arrangement of two parties riding in another's automobile on a trip to visit relatives. The court said:

"The question has arisen in other states under statutes similar to our own statute, and it is quite generally held that an agreement on the part of the plaintiff to pay plaintiff's share of the operating expenses of an automobile in which the plaintiff is riding does not make the plaintiff a passenger for hire or compensation. Rogers v. Vreeland, 16 Cal.App.2d 364, 60 P.2d 585; McCann v. Hoffman, Cal.App., 62 P.2d 401; Id., 9 Cal.2d 279, 70 P.2d 909; Starkweather v. Hession, 23 Cal.App.2d 336, 73 P.2d 247; Ernest v. Bellville, 53 Ohio App. 110, 4 N.E.2d 286; Olefsky v. Ludwig, 242 App.Div. 637, 272 N.Y.S. 158; Smith v. Clute, 251 App.Div. 625, 297 N.Y.S. 866; Master v. Horowitz, 237 App.Div. 237, 261 N.Y.S. 722; Id., 262 N.Y. 609, 188 N.E. 86; Morgan v. Tourangeau, 259 Mich. 598, 244 N.W. 173.

"In Rogers v. Vreeland, supra, it was sought to show plaintiff was not a guest within the contemplation of the California statute, by reason of the following alleged agreement:

" 'That at the time of the accident mentioned in this complaint the plaintiffs and the defendant, Richard Vreeland, were on a trip to see the wild flowers in the San Joaquin Valley, State of California, and that prior to commencing said trip an oral agreement was entered into between the plaintiffs and the defendant that the said plaintiffs would pay their share of the expense of running the said automobile and their share of any other expenses on said trip, and said agreement was in full force and effect at the time of the happening of said accident. Pursuant to said oral contract plaintiffs had (have) paid to the defendant their share of said expenses of said trip.'

"It was held plaintiff was such a guest in spite of the agreement quoted. The Court said:

" 'Running through the decisions in this state involving the "guest" statute is the element of material benefit to the defendant driver in the form of possible profits, where the elements of friendship and hospitality were not involved, and where the ride was taken as an integral part of a business transaction. * * * Doubtless the Legislature intended to change the rule heretofore adopted in this state, that an invited guest could recover for simple negligence, and to provide that such a person could not recover in the absence of a showing of intoxication or willful misconduct; and we are of the opinion that the section is applicable to a case such as the one now before us, where the riders, on a trip purely social, and without any commercial or business element, agreed to pay their share of the running expenses of the automobile and their share of any other expense on the trip. We do not consider such an arrangement between the riders and the driver as the giving by the former to the latter of such compensation as removes the riders from the status of "guest" within the meaning of the act.'

"In McCann v. Hoffman, supra, the Supreme Court of California said (70 P.2d [at] page 912):

" 'The great weight of authority is to the effect that the sharing of the cost of gasoline and oil consumed on a trip, when that trip is taken for pleasure or social purposes, is nothing more than the exchange of social amenities and does not transform into a passenger one who without such exchange would be a guest, and consequently is not payment for the transportation or compensation within the meaning of the statute. It is obvious that if a different result obtains under any construction of the statute its purposes would be defeated and its effect annulled. The relationships which will give rise to the status of a passenger must confer a benefit of a tangible nature and are limited. * * * Therefore, where a special tangible benefit to the defendant was the motivating influence for furnishing the transportation, compensation may be said to have been given. But it is not given where the main purpose of the trip is the joint pleasure of the participants. The payment of a portion of the expense, as for gasoline and oil consumed on the trip, is merely incidental and does not constitute the moving influence for the transportation. The provocation for the offer of transportation remains the joint social one of reciprocal hospitality or pleasure.'

"It seems to us the rulings and opinions in the cases above cited are sound."

We feel obligated to follow the reasoning in the case from which we have just quoted extensively because a writ was refused outright. Our Supreme Court in the recent case of Biggers v. Continental Bus System, Inc., Tex., 303 S.W.2d 359, 364 has specifically held that where that Court refuses a writ of error it gives full approval to the opinion in that case and makes the opinion as authoritative as one of its own opinions.

When the rules above quoted are applied to the facts of our case and we consider only that evidence, if any, which, viewed in its most favorable light, disregarding all evidence which would lead to a contrary result, we have to say there was insufficient evidence of probative force to submit to the jury the issue of joint enterprise. Other cases indicating a parallel view with that which we have in the case at bar are Henry v. Henson, Tex.Civ.App., 174 S.W. 2d 270 (writ refused) and Burt v. Lochausen, 151 Tex. 289, 249 S.W.2d 194.

■ Though we feel, in what we have already said on the questions discussed, that we have conformed to the rules and precedents that have been followed by our Supreme Court and that what we have said is decisive of the case, in the event the Supreme Court should not agree with us there is still another reason we feel that this case will have to be reversed. Of necessity, this suit was brought under Article 4675, Vernon's Civil Statutes, which provide in part as follows: "Actions for damage arising from death shall be for the sole and exclusive benefit of and may be brought by the surviving husband, wife, children, and parents of the person whose death has been caused or by either of them for the benefit of all." Appellee's pleadings in this respect allege:

"That this suit is brought by Minnie Jo Huffman, in accordance with Articles 5525 and 4675 of the [Vernon's Ann.] R.C.S. of Texas, and Section 160 of the Probate Code of the State of Texas [V.A.T.S.], and is brought against the defendant, Madie Monk Huffman, as defendant herein, under the provisions of Article 4675 R.C.S. of Texas."

In the very early case of East Line & Red River R. Co. v. Culberson, 68 Tex. 664, 5 S.W. 820, 821, our Supreme Court said:

"Here, then we have a case in which four persons are jointly entitled to damages to be recovered, (to be divided and proportioned among them, however, by the verdict of the jury,) and in which one brings the action for the benefit of herself and two others, and receives damages which are divided by the verdict among the three only. We think such a verdict cannot stand. *The error, in our opinion, goes to the foundation of the action.*" (Emphasis ours.)

The same court in Ft. Worth & D. C. R. Co. v. Wilson, 85 Tex. 516, 22 S.W. 578, 579, said:

"It is not an open question in this court that when the evidence develops the fact that the deceased had other relatives, who, under the statute, can share in the damages recovered for his death, the proceedings must be arrested until the pleadings are so amended that the suit can be conducted for the use of all of the beneficiaries."

In Galveston-Houston Electric Ry. Co. v. Reinle, Tex.Civ.App., 264 S.W. 783, 790, the Court said, "It cannot be reasonably inferred from * * * plaintiff's petition that the suit was brought in behalf of any other persons than the parties specifically named in the petition."

In Universal Transport & Distributing Co. v. Cantu, Tex.Civ.App., 84 S.W.2d 327, 329, a death action under Article 4675 by the surviving wife and child of the deceased the court said, "The undisputed evidence having shown that Amador Cantu, the father of Gilbert Cantu, Sr., was living, it was necessary that he be a party to the action for the recovery of any damages for the death of that decedent."

If any party fails or neglects to join in the suit any one of them may maintain and prosecute it but he must do so for the benefit of the other parties as well as himself. Houston and Texas Central Railway Co. v. Moore, 49 Tex. 31.

One of the most recent pronouncements of indispensable parties is found in Hollar v. Jowers, Tex.Civ.App., 310 S.W.2d 721, 724, wherein the Eastland Court said:

"Appellant did not file a sworn pleading complaining of a defect in parties as provided by Rule 93, nor did he make any attempt to bring in additional parties before the case was called for trial as provided by Rule 37. In this state of the record appellant waived his right to complain of any absence or defect of parties unless there is an absence of indispensable parties without which no valid judgment could be entered. An indispensable party is defined as 'a party who

has such an interest in the controversy or subject matter that a final adjudication cannot be made, in his absence, without injuring or affecting such interest.' 67 C.J.S. Parties, § 1, p. 892; Veal v. Thomason, 138 Tex. 341, 159 S.W.2d 472."

Under the record of this case, Mrs. G. I. Huffman, mother of the deceased for whom death damages were sought, having not been joined in the suit in any matter and the judgment having made no provisions whatever for her benefit and having divided the benefits awarded in the judgment in different proportions to the surviving widow and children we believe the failure was fundamental. This error of course may be corrected in the event of another trial.

The question of whether the Huffman brothers were joint enterprisers being a fact issue and we not having knowledge of what additional evidence there might be available to establish this relationship, this case, is for all the reasons stated, reversed and remanded for another trial.