**TEXAS HEALTH ENTERPRISES, INC., d/b/a Kern Manor And Hea Management Group, Inc., Appellants,**

v.

**Walter R. GEISLER, Individually and as Legal Representative of the estate of Ruth Simmons, Appellee.**

**Walter R. Geisler, Individually and as legal representative of the Estate of Ruth Simmons, Appellant,**

v.

**Texas Health Enterprises, Inc., d/b/a Kern Manor and Hea Management Group, Inc., Appellees.**

**No. 2–98–026–CV.**

Court of Appeals of Texas, Fort Worth.

June 24, 1999.

Underwood, Wilson, Berry, Stein & Johnson, P.C. and Kelly Utsinger, Dan L. Schaap, Gavin J. Gadberry of Amarillo, Texas, Schell, Beene & Vaughan, L.L.P. and Elizabeth Florence and R. Michael Beene, Dallas, for Appellants/Appellees.

Sue Walker and Barkholtz, Boehme & Borchardt and Brandon Boehme and Geno Borchardt, Fort Worth, for Appellee/Appellant.

Panel B: DAUPHINOT, RICHARDS, and HOLMAN, JJ.

## OPINION

LEE ANN DAUPHINOT, Justice.

### I. INTRODUCTION

In this appeal, we are primarily asked to decide whether the Medical Liability and Insurance Improvement Act[1] caps the amount of punitive damages a claimant may collect. We hold that it does not. In response to the remaining issues raised in this court:

▶ we decline to hold the constitutional provision that provides for punitive damages in wrongful death actions renders a statute, which limits punitive damages in survival actions, unconstitutional;

▶ we hold the evidence to be legally and factually sufficient to uphold the jury's finding that the management company was negligent and grossly negligent;

▶ because the wrongful death action was brought on behalf of all beneficiaries, the trial court correctly refused to abate or dismiss the plaintiff's suit for a lack of a necessary party; and

▶ we hold that although it was not error for the trial court to include the plaintiff's wrongful death damages in computing the damages cap amount, it did err in including the

---

1. *See* TEX.REV.CIV. STAT. ANN. art. 4590i (Vernon Supp.1999).

prejudgment interest in the calculation.

Accordingly, we affirm in part and reverse and render in part.

## II. BACKGROUND FACTS

Texas Health Enterprises, Inc. ("THE") owns Kern Manor, a nursing home in Pilot Point, Texas. HEA Management Group, Inc. ("HEA") provides support services for Kern Manor and other nursing homes: "financial, purchasing, ... major physical plant repair, nurse consulting, personnel functions to the extent that it's predominantly hiring, licensure." Richard Knight is the president of both THE and HEA.

On March 15, 1993, Ruth Simmons moved into Kern Manor. Ruth used a walker and needed assistance to use the bathroom and bathe. Walter R. Geisler, Ruth's son, and his wife, Cecilia, visited Ruth nearly every day and continually brought problems with Ruth's care to the attention of Kern Manor nurses. Ruth repeatedly was dehydrated, wet herself when no one helped her to the bathroom, and had dangerously low levels of her prescribed medications. During a ten-month period at Kern Manor, Ruth was hospitalized seven times with conditions that would not have occurred if Ruth had received minimal care.[2]

On January 11, 1994, Geisler and Cecilia visited Ruth. Ruth was in a wheelchair, and urine-soaked sheets lay wadded at the foot of Ruth's bed. When Cecilia went to put Ruth's slippers on her feet, she noticed that Ruth's sock on her right foot was soaked in urine. When Cecilia took the sock off, Ruth's right foot and lower leg were black. Once the Director of Nursing at Kern Manor, Joan Lair, determined

Ruth's right foot had no pulse, Ruth was rushed to the hospital; but later, Ruth's lower right leg had to be amputated. Two days later, Ruth lapsed into a coma and died on January 20, 1994.

## III. PROCEDURAL FACTS

Geisler filed a wrongful death and survival action against THE and HEA for damages proximately caused by their negligence and gross negligence while Ruth Simmons was living at Kern Manor. The jury awarded survival damages to Ruth's estate: $200,000 for pain and mental anguish and $21,109 for medical expenses. The jury also awarded Ruth's estate $5,000,000 in punitive damages against THE and HEA. The jury awarded Geisler, as a wrongful death beneficiary, $200,000 for loss of companionship and society and $300,000 for mental anguish.

The trial court awarded Ruth's estate (1) actual damages of $221,109 and (2) $48,221.68 in prejudgment interest on the actual damages. The trial court awarded Geisler (1) actual damages of $500,000 and (2) $109,044.04 in prejudgment interest. Based on a statutory cap on punitive damages,[3] the trial court added together all actual damages awards and all prejudgment interest and multiplied by four; thus, the trial court assessed $3,513,498.88 in punitive damages against THE and the same amount against HEA.

THE, HEA, and Geisler each appeal from the judgment, so each party is an appellant and an appellee.[4]

## IV. SUFFICIENCY OF THE EVIDENCE

In its first issue, HEA argues that the evidence was legally and factually insuffi-

2. Some of these conditions were dehydration, urinary tract infections, fecal impaction, malnutrition, and seizures as a result of nontherapeutic levels of her seizure medicine.

3. "[E]xemplary damages awarded against a defendant may not exceed four times the amount of actual damages or $200,000, whichever is greater." Act of June 3, 1987,

70 th Leg., 1 st C.S., ch. 2, § 2.12, 1987 Tex. Gen. Laws 44, 46, *amended and renumbered by* Act of April 11, 1995, 74 th Leg., R.S., ch. 19, § 1, 1995 Tex. Gen. Laws 108, 111 (current version at TEX. CIV. PRAC. & REM.CODE ANN. § 41.008(b) (Vernon 1997)).

4. *See* TEX.R.APP. P. 3.1(a), (c) & 25.1(c).

cient to support a finding of negligence or gross negligence against it. HEA posits that because Geisler failed to introduce evidence that HEA breached a duty to Ruth, which proximately caused her death, HEA cannot be held negligent or grossly negligent. HEA bases its argument on the fact that the evidence only showed that HEA provided ancillary health care services to nursing homes and did not employ the staff providing daily care to Ruth.

## A. STANDARDS OF REVIEW

In determining a "no-evidence" issue, we are to consider all of the evidence in the light most favorable to the party in whose favor the judgment has been rendered, and to indulge every reasonable inference from the evidence in that party's favor.[5] If there is more than a scintilla of such evidence to support the finding, the claim is sufficient as a matter of law, and any challenges go merely to the weight to be accorded the evidence.[6] There is some evidence when the proof supplies a reasonable basis on which reasonable minds may reach different conclusions about the existence of the vital fact.[7]

An assertion that the evidence is "insufficient" to support a fact finding means that the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the answer should be set aside and a new trial ordered.[8] We are required to consider all of the evidence in the case in making this determination.[9]

## B. APPLICATION

■ As stated previously, Knight is the president of both THE and HEA. HEA employs "all the workers and employees

you see working within the corporate headquarters." HEA employed nurse consultants to monitor quality assurance, monitor resident care and treatment, ensure proper charting, and ensure proper staffing at THE's nursing homes. These nurse consultants were also responsible for addressing all complaints concerning the THE facilities. THE paid HEA millions of dollars in management fees for these services.

HEA was repeatedly informed that the number of staff at Kern Manor, a THE facility, was inadequate. The record supports Geisler's pleadings that Kern Manor was inadequately staffed and that HEA failed to hire qualified nursing staff. No quality assurance meetings were conducted regarding Kern Manor. These were duties that HEA was, in fact, responsible for. Because of these deficiencies, Ruth's nursing-related needs could not be met. The evidence shows that these failures violated the standard of care for operating a nursing home and proximately caused Ruth's injuries and death. Accordingly, we hold the evidence was legally and factually sufficient to support the jury's findings that HEA was negligent.

■ Further, the evidence is legally and factually sufficient to support the jury's gross negligence finding against HEA. Gross negligence includes two elements:

(1) viewed objectively from the standpoint of the actor, the act or omission must involve an extreme degree of risk, considering the probability and magnitude of the potential harm to others, and

5.  See Formosa Plastics Corp. v. Presidio Eng'rs & Contractors, Inc., 960 S.W.2d 41, 48 (Tex. 1998); Merrell Dow Pharm., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex.1997), cert. denied, 523 U.S. 1119, 118 S.Ct. 1799, 140 L.Ed.2d 939 (1998); In re King's Estate, 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

6.  See Formosa Plastics Corp., 960 S.W.2d at 48; Leitch v. Hornsby, 935 S.W.2d 114, 118 (Tex.1996).

7.  See Orozco v. Sander, 824 S.W.2d 555, 556 (Tex.1992).

8.  See Garza v. Alviar, 395 S.W.2d 821, 823 (Tex.1965).

9.  See Maritime Overseas Corp. v. Ellis, 971 S.W.2d 402, 406 (Tex.), cert. denied, —— U.S. ——, 119 S.Ct. 541, 142 L.Ed.2d 450 (1998).

(2) the actor must have actual, subjective awareness of the risk involved, but nevertheless proceed in conscious indifference to the rights, safety, or welfare of others.[10]

HEA argues that "[t]here is no allegation or evidence that HEA authorized or ratified any act related to [Ruth's] care or treatment" or that "HEA had knowledge of the hazard" to Ruth. Before Ruth died, nurses at Kern Manor and residents' families repeatedly informed HEA of the dangerous lack of staff and supplies. This evidence and the evidence recited above showing that HEA was in charge of many aspects of Ruth's care that proximately caused her death are sufficient to show HEA was grossly negligent.

We overrule HEA's first issue.

## V. DAMAGES

### A. LIMITATION OF PUNITIVES

■ In a sole issue, Geisler argues that the trial court erred in reducing the punitive damages award because old section 41.007, which limited punitives to four times the amount of actual damages,[11] violated article XVI, section 26 of the Texas Constitution.[12] But article XVI, section 26 only addresses punitive damages in wrongful death claims.[13] The punitive damages in this case were awarded to Ruth's estate based on the survival action. Accordingly, even if old section 41.007 were unconstitutional because it limited punitive damages

in a wrongful death action, we would not need to make such a holding in this case, which only questions punitive damages in a survival action. We overrule Geisler's issue.

### B. CAP ON PUNITIVE DAMAGES

■ In their second issue, HEA and THE argue that the trial court erred by not further limiting or capping the punitive damage award. They base their argument on the express language of article 4590i, which limits "civil liability for damages" in a "health care liability claim." [14] This cap is adjusted by the percentage increase in the consumer price index between 1997 and the date of the judgment.[15] In this case, the required adjustment yields a cap of $1,290,000. Thus, we must determine whether "damages," as used in article 4590i, means only compensatory damages or whether it also includes the punitive damages that may be awarded in a "health care liability claim."

We have already decided this issue against HEA and THE's position. In *Horizon/CMS Healthcare Corp. v. Auld*,[16] we held that "damages" in article 4590i includes only compensatory damages aside from necessary medical expenses received before judgment. Accordingly, the trial court did not err by refusing to cap the punitive damage award based on article 4590i, and we overrule HEA and THE's second issue.

---

10. *See Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 21–22 (Tex.1994).

11. Act of June 3, 1987, *supra* note 3.

12. Every person, corporation, or company, that may commit a homicide, through wilful act, or omission, or gross neglect, shall be responsible, in exemplary damages, to the surviving husband, widow, heirs of his or her body, or such of them as there may be, without regard to any criminal proceeding that may or may not be had in relation to the homicide.
TEX. CONST. art. XVI, § 26.

13. *See Travelers Indem. Co. v. Fuller*, 892 S.W.2d 848, 851–52 (Tex.1995); *see also* 2

GEORGE D. BRADEN ET AL., THE CONSTITUTION OF THE STATE OF TEXAS: AN ANNOTATED AND COMPARATIVE ANALYSIS Art. XVI, § 26, at 757 (1977). *See generally Horizon/CMS Healthcare Corp. v. Auld*, 985 S.W.2d 216, 234 (Tex.App.—Fort Worth 1999, pet. filed) (approving use of former section 41.007 cap in wrongful death actions).

14. TEX.REV.CIV. STAT. ANN. art. 4590i, § 11.02(a).

15. *See id.* § 11.04.

16. 985 S.W.2d at 224.

## C. COMPENSATORY DAMAGES AND PREJUDGMENT INTEREST

### INCLUDED IN CALCULATING CAP

█ In the alternative in their third issue, HEA and THE argue that if article 4590i does not cap the punitive damage award, the trial court nevertheless erred by adding the wrongful death and survival damages together and by including prejudgment interest in its calculation.

First, HEA and THE assert that the actual damages award in the survival action and the actual damages award in the wrongful death action cannot be combined to determine the cap on punitives awarded in the survival action. This court has previously held that punitive damages relate "to the *total* amount of harm that occurred as reflected by the damages awarded by the jury." [17] Further, chapter 41 expressly indicates that the actual damages to be quadrupled encompass the actual damage awards to all plaintiffs. [18] Thus, the trial court did not err in including the wrongful death damages in computing the punitive damages cap. We overrule that portion of HEA and THE's third issue.

█ HEA and THE also argue that the trial court erred in including prejudgment interest in its calculation of the punitive damages cap. We agree. Case law is clear that prejudgment interest is not part of a plaintiff's "actual damages" and, thus, are not included in any computation of the punitive damages cap. [19] Adding prejudgment interest to the actual damages award and then imposing the statutory cap on this aggregate amount yields the same result forbidden by the supreme court when it said prejudgment interest could not be awarded on damages. [20] Accordingly, we sustain that portion of HEA and THE's third issue and hold that the trial court erred in including prejudgment interest in its calculation of the punitive damages cap.

## VI. NECESSARY PARTIES

█ In their final issue, HEA and THE argue that the trial court erred in not dismissing or abating Geisler's suit because all necessary parties were not joined. HEA and THE asserted in the trial court that because Ruth had another son, Geisler's brother, that son was a required plaintiff; thus, the case should have been dismissed or abated for the parties defect because there was "no evidence introduced at trial by [Geisler] to show that he was bringing the wrongful death action on behalf of his brother as well as himself."

█ Where an action is brought by one or some, but not all of the parties, it must appear that the suit was brought for the benefit of all of the parties. [21] When it does not appear from the record that all beneficiaries have been made a party to the lawsuit, the judgment cannot stand. [22] But any wrongful death beneficiary may bring a wrongful death action for the bene-

**17.** *I–Gotcha, Inc. v. McInnis*, 903 S.W.2d 829, 840 (Tex.App.—Fort Worth 1995, writ denied) (emphasis added).

**18.** "In a cause of action in which a party seeks recovery of exemplary damages related to injury to another person ... [or] death of another person ..., 'claimant' includes both that other person and the party seeking recovery of exemplary damages." TEX. CIV. PRAC. & REM.CODE ANN. § 41.001(1) (Vernon 1997).

**19.** *See id.* § 41.007; *Seminole Pipeline Co. v. Broad Leaf Partners, Inc.*, 979 S.W.2d 730, 759 (Tex.App.—Houston [14 th Dist.] 1998, no pet.); *I–Gotcha*, 903 S.W.2d at 841.

**20.** *See Cavnar v. Quality Control Parking, Inc.*, 696 S.W.2d 549, 554–55 (Tex.1985); *see also Wheelways Ins. Co. v. Hodges*, 872 S.W.2d 776, 783 n. 8 (Tex.App.—Texarkana 1994, no writ).

**21.** *See Avila v. St. Luke's Lutheran Hosp.*, 948 S.W.2d 841, 850 (Tex.App.—San Antonio 1997, pet. denied).

**22.** *See Webb v. Huffman*, 320 S.W.2d 893, 899 (Tex.Civ.App.—Amarillo 1959, writ ref'd n.r.e.).

fit of all beneficiaries.[23] Geisler's petition alleged that he brought the suit on his own behalf "as well as on the behalf and for the benefit of all parties entitled to bring such causes of action ... for the injuries, damages and death of [Ruth]." Thus, contrary to HEA and THE's assertion, there was some evidence in the record that Geisler was bringing the wrongful death action on behalf of his brother as well as himself. Accordingly, the trial court did not err in failing to abate or dismiss the claim on this basis. We overrule HEA and THE's fourth issue.

## VII. CONCLUSION

We overrule Geisler's sole issue. We also overrule HEA and THE's first, second, and fourth issues, and a portion of issue three. However, we sustain that portion of issue three that complains of the inclusion of prejudgment interest in calculating the punitive damages cap. We reverse that portion of the trial court's judgment and render judgment that Geisler is awarded $2,884,436 in punitive damages against each defendant.[24] We affirm the remainder of the trial court's judgment.[25]

**23.** See *Dennis v. Gulf, C. & S.F. Ry. Co.,* 148 Tex. 387, 224 S.W.2d 704, 705 (1949).

**24.** We reached this amount by adding together only the actual damages ($221,109 + $500,000) and multiplying by four.

**25.** See Tex.R.App. P. 43.2(a), (c).