**Delbert EASTER et ux., Appellants,**

v.

**Billy WALLACE, Appellee.**

No. 15948.

Court of Civil Appeals of Texas.

Fort Worth.

Nov. 7, 1958.

Rehearing Denied Dec. 5, 1958.

Roger W. Crampton, Wichita Falls, for appellants.

Jones, Parish & Fillmore and Elmer H. Parish, Wichita Falls, for appellee.

BOYD, Justice.

Delbert Easter and wife, Louise Easter, sued Billy Wallace for damages for the death of their son, Royce Easter, who was killed when an automobile in which he was riding, and driven by Wallace, after rounding a curve, collided with a guard rail pole and bridge and was demolished and burned. There was a summary judgment for Wallace and the Easters appeal.

Attached to and made a part of the motion for summary judgment was the deposition of appellee. There was no answer to the motion.

According to appellants' allegations, Royce was riding from Fort Worth to Wichita Falls with appellee, as a paying passenger, when the accident occurred; Wallace was guilty of negligence constituting a wanton, heedless and reckless disregard of deceased's and appellants' rights, which negligence evidenced a "cruel conscious indifference to the rights and welfare of the deceased and of the Plaintiffs, in the following particulars, to-wit: (a) The Defendant driver, Billy Wallace, was driving the automobile in question at a high and dangerous rate of speed in view of the conditions and the physical condition of the Defendant. (b) The Defendant driver, Billy Wallace, was negligent in that he was driving said automobile when he had not received an adequate amount of sleep prior to the time of departure on said trip. (c) The Defendant driver, Billy Wallace, was negligent in failing to lessen his speed as he approached the curve and bridge in question. (d) That the Defendant driver, Billy Wallace was negligent in failing to keep a proper lookout for bridges and abutments on said highway." It was alleged that such "acts of negligence and gross negligence" proximately caused the collision.

We understand appellants to concede that they were not entitled to go to a jury on an issue of gross negligence under the guest statute, Article 6701b, Vernon's Ann.

Civ.St., and that they pleaded only a case of ordinary negligence causing the death of a paying passenger.

We believe that there was no genuine issue of material fact such as would defeat the motion for summary judgment. Rule 166–A, Texas Rules of Civil Procedure.

The only evidence introduced on the hearing was the deposition of appellee. His testimony was in substance: He and Royce had been friends in Wichita Falls since their school days; they "ran around" together; they were both working for Convair in Fort Worth at the time of the accident; witness had a 1956 Chevrolet with the title in his stepfather's name, and Royce had a 1953 Chevrolet; they frequently traveled together back and forth between Fort Worth and Wichita Falls, using first one car and then the other;

"Q. Now when you and Royce decided to make this trip, at whose suggestion was it? A. Well I was coming to Wichita, I didn't know exactly when, and he had to come so we came on.

"Q. Well didn't you tell me in Ft. Worth that it was all Royce's idea to make the trip? A. It was all his idea on that trip, yes.

"Q. On that particular trip? A. That particular trip, but I was coming any way.

"Q. And he asked you to pick him up did he not? A. He did.

"Q. And he told you he was going to pay for all the expenses didn't he? A. He did, he said he would buy the gas and he didn't say what else.

"Q. He would buy all the gas for the trip? A. Right.

"Q. And do I understand that you say now that you were coming any way? A. Yes I was coming any way.

"Q. All right. A. But not that particular day.

"Q. You weren't going to go—in other words what day, did you have any day that you were planning on coming? A. No.

"Q. But at his suggestion and his offering to pay the gas, for all the gas, is that what caused you to leave when you did? A. No it was just because he was a friend of mine and he needed to come.

"Q. But the trip at that particular time was all his idea was it not? A. That's right.

"Q. And he had some business to transact here didn't he, with his father? A. He did. * * *

"Q. And did he pay for any gas? A. No.

"Q. Was he broke at the time? A. He was nearly, I knew that he didn't have enough money to live on the next week.

"Q. But it was your agreement before you started out that he was to pay for all the gas is that right? A. Either he would pay for it—

"Q. After he got here? A. No he didn't say that. The agreement was that he would pay for it or that we would go with him the next time. That's the way we worked it. * * *

"Q. Have you ever been paid for the gas on that trip? A. No, sir.

"Q. In other words he still owes it to you is that right? A. No there is not anything owed to me at all.

"Q. You don't feel that he owes it to you? A. No, sir. * * *

"Q. Did you have any purpose in coming to Wichita Falls that Saturday? A. No, sir.

"Q. You were just coming to visit your family? A. Yes, sir.

"Q. It was Royce that had some business to transact is that right? A. Yes, sir."

**918**

It is generally held that an agreement to pay a share of the operating expenses of an automobile in which one is riding does not make him a passenger for hire. Rowan v. Allen, 134 Tex. 215, 134 S.W. 2d 1022; McClain v. Carter, Tex.Civ.App., 278 S.W.2d 877; Allen v. Keck, D.C., 113 F.Supp. 873. In order for a person so contributing to be considered a paying passenger, there must be some tangible benefit moving to the driver, which benefit must have been the motivating cause of the driver's making the journey. Burnett v. Howell, Tex.Civ.App., 294 S.W.2d 410; Elkins v. Foster, Tex.Civ.App., 101 S.W. 2d 294; Johnson v. Smither, Tex.Civ.App., 116 S.W.2d 812.

In Raub v. Rowe, Tex.Civ.App., 119 S. W.2d 190, 193, error refused, the court quoted with approval the following from McCann v. Hoffman, 9 Cal.2d 279, 70 P. 2d 909, 912:

" 'The great weight of authority is to the effect that the sharing of the cost of gasoline and oil consumed on a trip, when that trip is taken for pleasure or social purposes, is nothing more than the exchange of social amenities and does not transform into a passenger one who without such exchange would be a guest, and consequently is not payment for the transportation or compensation within the meaning of the statute. It is obvious that if a different result obtains under any construction of the statute its purposes would be defeated and its effect annulled. The relationships which will give rise to the status of a passenger must confer a benefit of a tangible nature and are limited. * * * Therefore, where a special tangible benefit to the defendant was the motivating influence for furnishing the transportation, compensation may be said to have been given. But it is not given where the main purpose of the trip. is the joint pleasure of the participants. The payment of a portion of the expense, as for gasoline and oil consumed on the trip, is merely incidental and does not constitute the moving influence for the transportation. The provocation for the offer of transportation remains the joint social one of reciprocal hospitality or pleasure.' "

It is our view that appellee's testimony does not raise an issue as to Royce's being a passenger for hire. It follows that we think the summary judgment was properly entered.

The judgment is affirmed.