Carl B. SCHAFER, Appellant,

v.

Ruth STEVENS, Independent Executrix, et al., Appellee.

No. 15853.

Court of Civil Appeals of Texas.

Dallas.

July 21, 1961.

Rehearing Denied Dec. 1, 1961.

 

nary and gross negligence. She also pled and introduced evidence to the effect that Thomas H. Stevens, at the time of his death was Executive Vice-President of Tex-Mex Corporation at a salary of $1500 per month with the prospect of a salary increase in the near future to $2500 per month; and that he was regularly contributing from $800 to $1100 per month to his family as living expenses.

A judgment based on a jury verdict was rendered in favor of appellee for $253,151.-51, allocated as follows: For Ruth Stevens surviving widow, $185,118.51; for Susan Delinda Stevens, $29,112; for Thomas H. Stevens, Jr., $36,920; for Ruth Stevens, Independent Executrix, $2011, as burial expenses.

Appellant's first point on appeal is that the judgment is fundamentally erroneous because of the failure of appellee to join as plaintiffs, or to sue for the benefit of the surviving parents of her deceased husband.

Art. 4675, V.A.C.S. provides that actions for damage arising from death shall be for the sole and exclusive benefit of the surviving husband, wife, children and parents of the deceased.

The parents are not parties to this suit, nor is the suit brought for their benefit. That they were living at the time of the trial is not revealed by the pleadings or motion for new trial. It is revealed only by examination of the statement of facts, wherein the testimony of appellee is reproduced as follows:

"Q Where do Mr. Stevens' parents live?

"A In Lafayette, Alabama."

Appellant has cited numerous cases in support of his contention that failure to join or to account for the absence of any one of the named beneficiaries under the wrongful death statute is fundamental error. Among the cases cited are East Line & Red River R. Co. v. Culberson, 68 Tex. 664, 5 S.W. 820 (1887); Fort Worth & D.

Thompson, Knight, Wright & Simmons and Timothy E. Kelley, Dallas, for appellant.

Witts, Geary, Hamilton, Brice & Lewis, Jim K. Choate and W. S. Barron, Jr., Dallas, for appellees.

DIXON, Chief Justice.

This is a suit for wrongful death brought pursuant to Art. 4675, Vernon's Ann.Civ. St. by Ruth Stevens, Independent Executrix of the Estate of Thomas H. Stevens, deceased, for the benefit of herself as surviving widow, aged 30 years, and for the two minor children, Susan Delinda Stevens, aged 7 years, and Thomas H. Stevens, Jr., aged 4 years.

Appellee alleged that Thomas H. Stevens, aged 32 years, was killed August 23, 1958, in the City of Dallas, Texas, when an automobile in which he was riding was negligently driven against a tree by appellant Carl B. Shafer. Appellee pled both ordi-

C. R. Co. v. Wilson, 85 Tex. 516, 22 S.W. 578; San Antonio & A. P. R. Co. v. Mertink, 101 Tex. 165, 105 S.W. 485 (1907); Dennis v. Gulf C. & S. F. Ry. Co., 148 Tex. 387, 224 S.W.2d 704 (1949); Webb v. Huffman, Tex.Civ.App., 320 S.W.2d 893.

■ However, in this case appellant did not during the trial or in his motion for new trial make any complaint as to the non-joinder of the parents of deceased. Complaint of their non-joinder is made for the first time in appellant's brief on appeal. Appellee contends that in such a state of the record it must be held that appellant has waived the right to urge error by reason of the non-joinder of the parents. We agree with appellee.

In 1941 our present Rules of Civil Procedure were promulgated, including Rule 374, Texas Rules of Civil Procedure. This Rule expressly provides that a ground of error not distinctly set forth in the motion for new trial, in cases where a motion for new trial is required, shall be considered as waived. Our courts have held that notwithstanding the said rule, truly fundamental error may still be noticed for the first time on appeal; but the concept of fundamental error is much narrower now than it was under the old procedural statutes.

■ It is now held that when an error involves matters of public interest and the record affirmatively and conclusively shows error, or affirmatively and conclusively shows that the court rendering judgment was without jurisdiction of the subject matter, the error will be regarded as fundamental. McCauley v. Consolidated Underwriters, 157 Tex. 475, 304 S.W.2d 265, 266; Ramsey v. Dunlop, 146 Tex. 196, 205 S.W. 2d 979; City of Deer Park v. State, 154 Tex. 174, 275 S.W.2d 77, 85. Except in such instances, fundamental error is now rare indeed. See article by Associate Justice Joe Greenhill, entitled "Presentation of a Case to the Supreme Court of Texas", 38 Tex.Law Rev. 538, 541.

■ Moreover it has been held many times, both before and since promulgation of the new rules in 1941, that when it is necessary to examine the statement of facts to discover error, the error is not fundamental. O'Connor v. Gable, Tex.Civ. App., 298 S.W.2d 209; Krottinger v. Marchand, Tex.Civ.App., 252 S.W.2d 217; Insurors Indemnity & Ins. Co. v. Associated Indemnity Corp., 139 Tex. 286, 162 S.W. 2d 666, 670; White v. Glengarry Oil Co., 137 Tex. 626, 156 S.W.2d 523; Texas & Pacific Ry. Co., v. Lilly, 118 Tex. 644, 23 S.W. 697, 699; Ford & Damon v. Flewellen, Tex.Com.App., 276 S.W. 903; 3-B Tex.Jur. 39.

■ In the situation presented to us here, where appellant did not complain until the case was on appeal, and where even then it was necessary to examine the statement of facts to discover error, we hold that appellee's failure to join the parents of deceased as parties or beneficiaries is not fundamental error. Appellant's first point on appeal is overruled.

■ In his second and third points appellant asserts that there was no evidence or in the alternative the evidence was insufficient to support the submission to the jury of special issues Nos. 2, 4, 7, 9, 12, 15, 21 and 23. Notwithstanding their wording these points must be considered "no evidence" points. See Mayflower Inv. Co. v. Stephens, Tex.Civ.App., 345 S.W.2d 786, 797, quoting from an article by Chief Justice Robert W. Calvert in Tex. Law Review, Vol. 38, No. 4 for April 1960.

Special Issue No. 2 inquired whether the motivating influence of appellant in transporting Thomas H. Stevens in the automobile at the time of the collision was the furtherance of a business deal in which appellant had the expectation of tangible benefit of pecuniary nature. Issues were submitted to the jury inquiring whether (a) appellant was driving the car at an excessive rate of speed, (b) in excess of 35 miles per hour, or (c) failed to stop his

car at a stop sign at the intersection, or (d) failed to steer the car in such a manner as to keep it on the roadway, or (e) to apply the brakes on the automobile, or (f) drove the car at an excessive rate of speed under certain existing hazardous condition, to-wit, a curve in the road, a rough road and a stop sign near the intersection. Issues Nos. 4, 7, 9, 12, 15, 21 and 23 inquired whether the above alleged acts were done in heedless and reckless disregard of the rights of others including Thomas H. Stevens.

The obvious purpose of special issue No. 2 was to obtain a fact finding which would furnish a basis for determining whether Stevens was a guest within the meaning of the Guest Statute, Art. 6701b, V.A.C.S. The purpose of the others of the above named special issues was to determine whether (if it had been found that Stevens was a guest within the meaning of the Statute) appellant's acts were done in such a manner as to cast liability on appellant under the guest statute.

■ Later in this opinion we shall review the material evidence. For the present we shall merely say that there is some evidence of probative force in the record to support the submission of the issues. That being so it was the duty of the court to submit the issues even though the court may have felt that the evidence was insufficient to support an affirmative answer by the jury. See Wood v. American Security Life Ins. Co., Tex.Civ.App., 304 S. W.2d 559, 565, and authorities there cited.

Appellant's second and third points are overruled.

■ In his fourth point appellant says that the affirmative answer of the jury to special Issue No. 2 is against the great weight and preponderance of the evidence. The nature of this point requires a careful study of the evidence.

Appellee, Mrs. Ruth Stevens, testified that her husband had helped organize Tex-Mex Corporation, of which he was Executive Vice-President. The corporation had been formed for the purpose of promoting various business interests. The first good thing that it had done was the building of Holiday Inn Hotel. Because of the type of business he was in, her husband would sometimes do more work after business hours than he would during business hours.

Carl B. Schafer testified that he is a promoter and broker with the continental United States as his territory. It is his business to find capital for business ventures. He and Joe D. Farris had been discussing mining properties in Arizona, in which properties Farris had an interest he was desirous of developing. Schafer knew that Tex-Mex Corporation had mining equipment in Arizona which was idle at that time. About 4:00 P. M. Schafer called Stevens at his office and arranged a meeting. Stevens agreed to meet Schafer and Farris that evening at the Skyriders Club at Holiday Inn Hotel on Lemmon Avenue. Stevens told Schafer he would arrive late, as he first had to attend a cocktail party elsewhere. He arrived about 9:30 o'clock that evening.

There is no doubt this meeting was a business appointment. We quote from Schafer's testimony:

"Q * * * you called Tom Stevens and made a prearranged business appointment, * * * for him to talk to Joe Farris, as you just said to the jury?

"A That is right.

* * * * * *

"A You men gathered together that evening for the purpose of a business discussion, didn't you, pursuant to a call you made to Tom Stevens?

"A Yes, sir.

* * * * * *

"Q But your purpose in calling Tom Stevens that night wasn't just to have a friendly social drink, it was to talk business and to promote him into the deal, wasn't it?

"A Yes, sir, I have already told you that.

\* \* \* \* \* \*

"Q And you expected to get something out of the deal if it was put together, because you were the broker and you were the man that brought Tom Stevens into it?

"A Of course.

"Q You had the expectation of profit, money, if the deal could be made and go through?

"A Of course."

Schafer testified that toward the latter part of the evening they quit talking business and were merely enjoying a social visit. The Skyriders Club closed at 12:00 midnight. Schafer, Farris and Stevens had to leave. They decided to go to Trader Hank's, which operated at later hours. He testified that they had already quit talking business, and the transfer of their activities to Trader Hank's was purely a social affair. However, other parts of his testimony are to the contrary. Again we quote from his testimony:

"Q Now, sir, is it ordinarily in your business to have drinks in the evening and continue and stay together all evening for the purpose of promoting somebody into a deal, is that customary?

"A Yes, sir.

"Q Tom Stevens had not turned your deal down that night, had he?
"No, sir.

\* \* \* \* \* \*

"A As a matter of fact, in my business, it is good to quit talking business and start playing a little bit because people become more friendly that way, more inclined to do business with each other.

"Q Well, if you want people to start playing a little bit, to get them friendly, that has the business purpose in mind, doesn't it, sir?

"A Yes, it would have.

"Q That is right. It is best for your business, isn't it?

"A Yes.

"Q And your whole purpose with Tom Stevens that night for calling him on the phone, was to get his company, Tex-Mex, and him, interested in this mining venture, wasn't it?

"A Yes, sir, that was my reason for calling him.

\* \* \* \* \* \*

"Q But you were trying to promote him into the deal?

"A Yes.

"Q You have already testified to that?

"A Yes.

"Q And you thought that to get him promoted into the deal, it would be best, to use your own language, to not discuss contracts and figures and dollars and cents, but to play a little, that is your language, isn't it?

"A Yes, sir.

\* \* \* \* \* \*

"Q \* \* \* Now, you have said it is better to play a little bit, for your business right?

"A Uh-hum.

"Q Was it this sort of playing that you had in mind when you were there, just in the Holiday Inn, not talking formal, dollars and cents figures, and contracts and tonnage, but having a drink, maybe telling jokes, or telling stories, talking about bird dogs. Tom liked dogs, you talked to him about it, your purpose was to get that friendly, social atmosphere conducive to the ultimate arrangements of business association, wasn't it?

"A You could say that."

Schafer also testified that when they left Holiday Inn they decided to go at Stevens' invitation to a ranch he had leased in the north part of the county to see some hunting dogs owned by Stevens. But here again his testimony is not consistent. The ranch was located on Noel Road at Belt Line Road. The accident took place at the intersection of Valley View Lane and Hillcrest Avenue, at a point which is north and east of the ranch. The route pursued by Schafer, Farris and Stevens after leaving the Holiday Inn Hotel was north on Lemmon Avenue and Marsh Lane (Marsh Lane is merely an extension of Lemmon Avenue north of Northwest Highway) for a distance of several miles to Valley View Lane, then east on Valley View Lane for several miles to the scene of the accident at Valley View Lane and Hillcrest Avenue. The route they took thus led them further north than the ranch and further east than the ranch. But it was a direct route to Trader Hank's, for Trader Hank's was located near the intersection of Valley View Lane and Central Expressway.

David Witts, attorney for Tex-Mex Corporation, and a member of the law firm which represents appellee, testified that he was at the Skyriders Club that evening attending a family party. Schafer and Farris were seated at another table. About 9:30 o'clock Stevens arrived and sat down at the table with Schafer. Later in the evening Stevens asked Witts to come to Schafer's table to discuss the Arizona mining deal. Witts joined Schafer's party for a while but declined to give an opinion about the Arizona deal until he had more factual information.

We shall not further quote or summarize the evidence. There was a conflict in the testimony as to whether the motivating influence of appellant Schafer in transporting Thomas H. Stevens at the time of the accident was the furtherance of the business deal in which Schafer had the expectation of tangible benefit of a pecuniary nature. But it is our opinion that the affirmative answer of the jury was not so against the overwhelming weight and preponderance of the evidence as to be manifestly wrong.

Appellant in support of his fourth point cites us to Gregory v. Otts, Tex.Civ.App., 329 S.W.2d 904; Webb v. Huffman, Tex. Civ.App., 320 S.W.2d 893; Easter v. Wallace, Tex.Civ.App., 318 S.W.2d 916; El Paso City Lines v. Sanchez, Tex.Civ.App., 306 S.W.2d 396; Young v. Bynum, Tex.Civ. App., 260 S.W.2d 696; Burt v. Lochausen, 151 Tex. 289, 249 S.W.2d 194; Rowan v. Allen, 134 Tex. 215, 134 S.W.2d 1022, and Raub v. Rowe, Tex.Civ.App., 119 S.W.2d 190.

Each of the above cases is to be distinguished from the case we have here. In Raub v. Rowe, Rowan v. Allen, Young v. Bynum, and Easter v. Wallace, supra, the relationship between the parties was either that of friendly neighbors or relatives "each glad to contribute to the happiness and welfare of the other." The fact that they may have shared expenses on the trip did not alter their relationship. In the case now before us appellant Schafer, as shown by his own testimony, was seeking a pecuniary profit from a prospective deal.

In Burt v. Lochausen, supra, it was undisputed that the parties had concluded their business by noon, and the rest of the afternoon went about their own devices in search of pleasure. In the instant case Schafer himself testified that the business had not been concluded, and that part of his promotional method of approach to a business deal was to quit talking business and to "play" for awhile.

In El Paso Lines v. Sanchez, supra, the invitation to lunch was merely a social invitation, not a business invitation. As the opinion says the main purpose was to eat. If the main purpose had been to discuss business the parties could better have stayed at the tourist court. In the instant case the parties had to leave the Skyriders Club because the Club closed at midnight. In order to continue their conference they had to transfer their conference to another location.

In Webb v. Huffman, supra, two brothers merely took turns driving each other to work.

Gregory v. Otts, supra, involving a service station attendant, is actually authority in favor of appellee not appellant.

■ Appellant argues that in order to take the case out of the guest statute there must have been a tangible benefit which flowed to appellant. We agree. But the tangible benefit need not have been the actual payment of money by Stevens to Schafer; nor need their business trip have resulted in a consummated deal. If Schafer's motive both in the business discussion and the subsequent entertainment of Stevens as a prospective customer was to obtain a contract from Tex-Mex Corporation, which contract would net Schafer a money profit, we think the case is not governed by the guest statute. This view is supported by these cases: Gregory v. Otts, Tex.Civ.App., 329 S.W.2d 904; Hernandez v. Castillo, Tex.Civ.App., 303 S.W.2d 508; Burnett v. Howell, Tex.Civ. App., 294 S.W.2d 410; Johnson v. Smither, Tex.Civ.App., 116 S.W.2d 812; and Elkins v. Foster, Tex.Civ.App., 101 S.W.2d 294. Appellant's fourth point is overruled.

■ Appellant's fifth point on appeal alleges that the jury's answers to special issues Nos. 4, 7, 9, 12, 15, 21 and 23 that the conduct of appellant was "in heedless and reckless disregard of the rights of others, including Thomas H. Stevens," is against the great weight and preponderance of the evidence.

We agree with appellant. But before giving our reasons we shall review the material evidence bearing on the point.

Valley View Lane east from Marsh Lane toward the intersection with Hillcrest Avenue is a black top crowned road, but it is narrow, rough and sometimes bumpy. There is a curve in it at Dooley Road, and another curve in it just east of the intersection with Hillcrest Avenue. This latter curve, which turns rather sharply to the left, is of such a nature as to give somewhat the appearance of a dead end at the intersection. Police Officer Horn testified that this curve cannot be traveled safely at a speed in excess of 35 miles per hour. There was no street light at the intersection. There was a stop sign on Valley View Lane. Appellant's car did not stop at this stop sign. The scene of the accident is in a residential area in the outskirts of the City of Dallas.

Police officers Horn and Greenhaw, both trained as accident specialists, both testified that continuous skid marks of appellant's car began 140 feet from the tree and ran past the stop sign. Prior to these continuous skid marks there were "skippy" skid marks. One officer estimated the car's speed at 70 to 75 miles per hour as it approached the intersection, the other officer at 85 to 90 miles per hour. The car's speed at the moment of its impact with the tree was estimated to be 40 to 50 miles per hour. The speed limit on Valley View Lane was 35 miles per hour. A large tree was located at the southeast corner of the intersection. After striking the tree appellant's car whirled to its right, clockwise, and came to a stop facing southwest in a ditch on the right hand side of the road. Officer Horn testified that there is a blind corner at the intersection, the view being obstructed by a hedge on the northwest corner.

Officer Horn testified that the distance from Holliday Inn Hotel to the intersection of Valley View Lane and Hillcrest Avenue is 10.3 miles. Appellee undertook to show that appellant's car traveled this distance in eight to ten minutes. A waitress at Holiday Inn Hotel was waiting for a taxicab to take her home. She noticed the Hotel clock showed it was 12:25 A.M. She saw the three men leave in the car at a time she estimated to be 12:30 or 12:32 A.M. Another witness said that while sitting on her front porch she heard the crash of the car against the tree at a time estimated by her to be between 12:32 and 12:40 A.M. A third witness, on his way home nearby, stopped at the scene after the accident at a

time estimated by him to be between 12:45 and 12:50 A.M. This witness was certain the time was several minutes prior to 1:00 A.M. because he was on his way home to relieve a baby sitter before 1:00 o'clock, so he would not have to pay the baby sitter for another hour's time.

The above testimony, which was uncontroverted, may not establish the time and speed elements with that accuracy for which appellee contends. But it does tend to show that in traveling the 10.3 miles between Holiday Inn Hotel and the scene of the accident appellant's car was driven for most of the way at a speed well in excess of the speed limit of 35 miles per hour.

Appellant himself, testified that he was not familiar with the area between Holiday Inn Hotel and the intersection where the accident occurred. Since appellant was an interested witness, his testimony, though uncontradicted, is not conclusive. It did no more than raise a fact issue. Nevertheless his testimony is not evidence that the exact opposite of what he said is true. To reject his testimony would be to leave no evidence whatever as to whether appellant was familiar with the road and knew beforehand of its hazards. Missouri-Kansas-Texas R. Co. v. McFerrin, 156 Tex. 69, 291 S.W.2d 931, 945; R. T. Herrin Petroleum Transport Co. v. Proctor, Tex., 338 S.W.2d 422.

We agree with Justice Jack Pope when in Hernandez v. Castillo, Tex.Civ.App., 303 S.W.2d 508, 510 he says: "The line between ordinary negligence, Rogers v. Blake, 150 Tex. 373, 240 S.W.2d 1001, and gross negligence, Burt v. Lochausen, 151 Tex. 289, 249 S.W.2d 194 is not easily drawn." However, the authorities have given us some guide posts. The phrase "heedless and reckless disregard for the rights of others" is synonymous with gross negligence. Bowman v. Puckett, 144 Tex. 125, 188 S.W.2d 571; Rogers v. Blake, 150 Tex. 373, 240 S.W.2d 1001, 1003; Sims v. Smith, Tex. Civ.App., 332 S.W.2d 99. We also find the following holdings: Excessive speed alone is not sufficient to support a finding of gross negligence. Bruton v. Shinault, Tex.

Civ.App., 314 S.W.2d 143; Webb v. Karsten, Tex.Civ.App., 308 S.W.2d 114; Bullock v. Atlantic Refining Co., Tex.Civ.App., 289 S.W.2d 618. Even a combination of acts of ordinary negligence will not necessarily constitute gross negligence. Sims v. Smith, Tex.Civ.App., 332 S.W.2d 99, 101; Ray v. Zackcy, Tex.Civ.App., 329 S.W.2d 350; Hernandez v. Castillo, Tex.Civ.App., 303 S.W.2d 508; Wood v. Orts, Tex.Civ. App., 182 S.W.2d 139; Mayer v. Johnson, Tex.Civ.App., 148 S.W.2d 454; Rowan v. Allen, 134 Tex. 215, 134 S.W.2d 1022. Momentary thoughtlessness, inadvertence, or error of judgment is not enough. Sims v. Smith, Tex.Civ.App., 332 S.W.2d 99. There must be a *conscious* indifference to the rights of others. Rogers v. Blake, 150 Tex. 373, 240 S.W.2d 1001; Fancher v. Cadwell, 159 Tex. 8, 314 S.W.2d 820. Failure to stop at stop sign is not sufficient. Hernandez v. Castillo, Tex.Civ.App., 303 S.W.2d 508; Rogers v. Blake, 150 Tex. 373, 240 S.W.2d 1001.

In our opinion the evidence in this case is insufficient to support the jury's verdict that appellant drove his car on the occasion in question with heedless and reckless disregard for the rights of others, including Thomas H. Stevens. We so hold because it seems to us that the evidence will not support a finding that appellant drove his car with conscious indifference to the rights of others. As we have already pointed out if the jury did not believe appellant's testimony that he was not familiar with the area traveled by the car, there is no evidence at all on that question. There is no evidence that he knew beforehand the hazards of the road, yet knowingly and with conscious indifference ignored hazards of which he had foreknowledge, as is the case in Fancher v. Cadwell, 159 Tex. 8, 314 S.W.2d 820; Bernal v. Seitt, 158 Tex. 521, 313 S.W.2d 520, 521 and Bowman v. Puckett, 144 Tex. 125, 188 S.W.2d 571. In the instant case appellant Schafer, as shown by the continuous skid marks extending a distance of 140 feet before the car struck the tree, tried to stop, and did slow down,

when faced with a curve in the road, which curve had somewhat the appearance of a dead end. In fact the evidence is that he had slowed down from a speed estimated to be 75 to 90 miles per hour to a speed of 40 to 50 miles per hour just before the accident. Certainly this frantic effort to slow the speed of the car does not tend to show conscious indifference to the rights of others. Moreover, it is to be remembered that appellant had an interest in the safety and well being of Thomas H. Stevens, for the journey was made as part of a sales plan which appellant hoped would result in the enlisting of the aid of Stevens in the Arizona Mining project—to the financial gain of appellant.

■ We sustain appellant's fifth point on appeal. However, our sustaining of the point is not decisive of the appeal, for we have held that Stevens was not a guest within the meaning of the Art. 6701b, V.A.C.S.; but was a business invitee. That being true, appellant would be liable for ordinary negligence, and the evidence and jury verdict establish ordinary negligence on his part.

■ In his sixth point on appeal appellant charges error in the form and wording of special issue No. 2. The issue inquired whether "the motivating influence of defendant Carl B. Schafer, in transporting Thomas H. Stevens in the automobile * * * was the furtherance of a business deal in which the defendant Carl B. Schafer had the expectation of a tangible benefit of pecuniary nature?"

Appellant says that the word "expectation" was confusing and misleading and would entitle the jury to answer the issue in the affirmative even if there was only a slim chance of a tangible benefit.

We see no merit in appellant's sixth point. In our discussion of appellant's fourth point we agreed that in order to take the case out of the guest statute there must have been a tangible benefit which flowed to appellant. But we also stated that the tangible benefit

need not have been the actual payment of money, nor need their business trip have resulted in a consummated deal. It is undisputed that appellant as a broker invited Stevens to a meeting with Farris and himself for the primary purpose of endeavoring to induce Stevens, as Vice-President of Tex-Mex Corporation, to invest money in Farris' Arizona mining project at a profit to appellant. Stevens was well aware of this purpose. Whether appellant's efforts ultimately would have been unsuccessful is immaterial to the issue here. It is the primary purpose of appellant in inviting and transporting Stevens which must determine the status of Stevens under our guest statute.

In any event, if there was error in the form in which the issue was submitted, it was harmless error. In overruling appellant's fourth point we in effect held that this case does not come within the Guest Statute, Art. 6701b, V.A.C.S., therefore, appellee did not have to prove gross negligence, or heedless and reckless disregard. It was necessary for appellee to prove only ordinary negligence. Appellant's sixth point is overruled.

■ In his seventh point appellant complains because the court's definition of heedless and reckless disregard of the rights of others omitted the element of a persistent course of conduct, citing Sims v. Smith, Tex.Civ.App., 332 S.W.2d 99; Bowman v. Puckett, 188 S.W.2d 571, 575; and other cases.

The trial court gave the following definition:

"Heedless and reckless disregard of the rights of others as used in this charge, is that entire want of care which raises a belief that the act or omission complained of was the result of a conscious indifference to the safety, rights and welfare of others to be affected by it."

It was not error for the court to omit the element of a persistent course from its defi-

nition. The definition given was the same as that given in Fancher v. Cadwell, 159 Tex. 8, 314 S.W.2d 820, 825, except that the instant definition does not include the statement "By the term, 'Gross Negligence', as used in this charge, is meant more than momentary thoughtlessness, inadvertence or error of judgment." No objection was made by appellant to the omission of the foregoing statement.

In the Fancher case, above cited, at pages 821–822 of 314 S.W.2d our Supreme Court discusses the question of a "persistent course", and holds that in determining a host's liability to a gratuitous guest on account of alleged gross negligence the question depends upon the combination of circumstances present at the particular time and place, not on the period of time involved.

We shall not further go into the subject, for here again we have a situation where, if there was error, it was harmless error. As we have heretofore pointed out in our consideration of appellant's fourth point we held the evidence sufficient to uphold the jury's verdict that the motivating influence in appellant's meeting and transporting Stevens was the furtherance of a business deal from which he expected to make a profit. It was not necessary to prove gross negligence. It was not necessary to define heedless and reckless disregard for others. Appellant's seventh point is overruled.

In his eighth and ninth points appellant says that the trial court committed error in commenting to the jury on the credibility of (8) appellant Schafer, and (9) appellant's witness Ralph Snyder which, said errors were each calculated to cause and probably did cause the rendition of an improper judgment.

■ Appellant cites several instances when he claims the court commented on his credibility. For example we quote these excerpts from the cross-examination of appellant:

"Q Wouldn't you call it a hot business deal where you needed to get the thing together in a hurry?

"A Well you see you don't hurry a thing that size.

"Q Well, sir, I am not asking—

"The COURT: Just answer the question, sir.

"MR. BRICE: Thank you, Your Honor.

"THE COURT: Just answer the question, do you understand the question?

"A No, repeat the question.

"Q The question is, were you in what you would call a hot business deal that you had to put together in a hurry?

"A No."

Appellant Schafer at an earlier date had testified that he was driving the car when the three men left Holiday Inn Hotel, but that after he failed to turn to the left on Northwest Highway at Stevens' directions, he stopped the car and Stevens took over as driver of the car. At this trial he changed his testimony and stated that Stevens had directed him to turn to the right on Northwest Highway. It was in this connection that the following cross-examination took place:

"Q Now you say now that you remembered Tom Stevens telling you to turn to the right?

"A I know he told me to turn, I don't know which way he told me to turn, I can't testify as to it, it has been a long time ago, Mr. Brice.

"Q Well, sir, you testified to it in seven different ways right here; did you ever go back and change your testimony in the other case?

"A All I said was the man told me —got me confused.

"THE COURT: Just answer the question sir.

"A No, sir, I haven't."

In our opinion the statements of the trial judge as above quoted do not constitute a comment on the credibility of appellant. In Texas Mexican R. Co. v. Bunn, Tex.Civ.App., 264 S.W.2d 518, 527, Justice Norvell, now a member of our Supreme Court said: "A trial judge is necessarily allowed some discretion in expressing himself while controlling the trial of a case, and a reversal of a judgment should not be ordered unless a showing of impropriety, coupled with probable prejudice, is made."

 A judge on his own motion may exclude improper testimony, McCormick & Ray "Texas Law of Evidence" Vol. 1, p. 20, Sec. 22; 41-B Tex.Jur. 194, and cases cited. It is permissible for a judge to instruct a witness to give responsive answers, and such instruction standing alone is not a comment on the weight of the evidence.

 On a third occasion during the cross-examination of appellant Schafer proceedings are shown as follows:

"Q Oh, you were, but you read your own deposition two or three times; did you think, Mr. Schafer, you might have some difficulty in remembering what you had said in your deposition, so that you would have to be sure and read it?

"A No, all I have to do is tell the truth, Mr. Brice.

"Q That is right. Why do you have to read your own deposition two or three times, it is just 23 pages long?

"A Because I know you were going to try to trap me into saying something that wasn't true, and then try to prove that I said it. You are pretty strong at that, I understand.

"Q Oh, I am, that is what you have been told about me. Well, who told you that, by the way?

"A That is the general reputation.

"THE COURT: Members of the Jury, you are instructed by the Court not to consider his statement for any purpose whatsoever. Strike it out from the record. There is no testimony, no evidence on it, and the witness is instructed by this Court to only answer the questions and not make any voluntary statements."

At this point counsel for appellant objected stating that the answer was responsive to question asked. Counsel then requested that the instruction be withdrawn, which request the court overruled. Thereupon counsel moved for a mistrial. This motion too was overruled. A recess was taken at this point. When court reconvened appellee's counsel requested the court to withdraw the instruction. In response to this request the court withdrew his instructions as follows:

"THE COURT: Members of the jury, the Court asks you not consider, and the Court withdraws his instructions, the last instruction given you and asks you not to consider it for any purpose whatsoever."

After the court had withdrawn his instruction counsel for appellant made a motion as follows:

"To refresh the recollection of the jury then, I move the court to have the Reporter read back the questions and answers and the court's instruction so that the jury may know just exactly what.

"THE COURT: All right, you may do that, Miss Reporter, please."

Thereupon the questions and answers were read again to the jury.

Do these proceedings reflect reversible error? In our opinion they do not. In the last instance the error, if there was one, was cured by the court's withdrawal of his previous instructions and sustaining appellant's motion to have the court re-

porter read back the questions and answers. Appellant thereby acquiesced in the court's action. Certainly we cannot truly say that we believe that any of the proceedings quoted above were calculated to cause and probably did cause an improper judgment. Rule 434, T.R.C.P. Appellant's eighth point is overruled.

■ Appellant Schafer testified that not he but Stevens was driving the car at the time of the accident. In corroboration appellant offered the testimony of Ralph Snyder, who as an expert witness gave his opinion that Stevens was driving the car.

Snyder identified himself as a safety engineer with an office in Oklahoma City, Oklahoma. For about 28 years he had been doing analysis work in that field. He conducts a Drivers' Training Service. He also conducts a Safety Service in connection with which he devised a chart which is known as an accident analysis calculator and which he says is used by attorneys and accident investigators all over the country. His third business is known as the Accident Analysis Laboratory, which is a business in which attorneys and accident investigators send him unusual and difficult traffic accident cases for analysis. He describes his methods as follows:

"I might compare it to a criminology or the criminoligist solving difficult crimes; I might, coining a word, be an 'accidentologist', solving traffic accidents and what happened in traffic accidents the same as a criminologist would from the fact that he uses fingerprints and ballistics and chemistry and such as that; I use the same sciences in comparison, skid marks to me are the same as fingerprints would be to the fingerprint expert, the angle of impact, forces of impact on vehicles, the ground evidence, are all we are able to determine through close observation and some mixture of science as to exactly the reconstruction or the analysis of these accidents on the same basis as they would solve a crime."

Snyder's opinion that Stevens was driving the car at the time of the accident was based on data furnished to him by appellant. On direct examination of Snyder the record discloses these proceedings:

"Q Does your type of work require, Mr. Snyder, that you make fairly frequent appearances in court?

"A Yes, the way that works is, the attorneys who call me into these cases—

"MR. BRICE: May it please the Court, in the interest of time, since the witness is a seasoned courtroom witness himself, as he testifies, we suggest to the Court, and object to his volunteering long answers, but just answer the lawyer's questions. ·

"THE COURT: Yes, sir, the witness said that he was.

"Q (By Mr. Kelley) All right, would you tell us why it is, Mr. Snyder, that you are called upon to testify frequently in court?

"A The attorneys send me their cases and I make an unbiased analysis; if my findings are adverse to the attorney, of course, he knows I would be of no value to the court, so I don't appear, but if my testimony is favorable—

"MR. BRICE: Your Honor, not directed to that particular answer, but we ask the Court to admonish the witness not to go into long answers that are not responsive. ,

"THE COURT: Yes, sir, the witness is instructed not to makr long voluntary statements, sir, just answer the questions, sir."

Later in the trial appellant's counsel moved for a mistrial because of this and other similar "harassments", which counsel contends were comments by the court on the credibility of Snyder. In the interest of time and space we shall not describe in

detail these other "harassments". Suffice it to say we have studied the record and cannot agree that the court's statements were comments on Snyder's credibility.

Moreover, we do not believe that the court's admonitions were calculated to cause and probably did cause an improper judgment. Appellant does not deny that there was evidence that he, appellant Schafer, was driving the car. Appellant does not present a point attacking the jury's verdict finding that he was driving the car. Appellant's ninth point is overruled.

■ In his tenth point on appeal appellant complains that he was not allowed to examine a statement tendered to the witness Henson by counsel for appellee on cross-examination.

The record reflects these proceedings:

"Q All right, I believe you told me when I took your statement, and I will show it to you here, this is your signature, isn't it?

"A Yes.

"Q I will ask you to look right here.

"MR. KELLEY: I wonder if I could see that, if you are going to show it to the witness, please; please, Mr. Brice, could I see it, if you are going to show and question the witness from it?

"MR. BRICE: Now, Your Honor, he may not.

"THE COURT: Counsel, he is just identifying it, I assume.

"MR. KELLEY: If that is all he is doing, but he is pointing to something in it, as I understand it.

"MR. BRICE: That is right.

"MR. KELLEY: He is asking the witness something about it.

"MR. BRICE: I am going to ask the witness something about it, yes, sir.

"MR. KELLEY: Could I see it, then?

"MR. BRICE: Not at this point, no sir.

"MR. KELLEY: Would you note our objection?

"MR. BRICE: Unless the court directs me to show it to you at exactly this point. Mr. Henson is your witness, Mr. Kelley.

"MR. KELLEY: I don't know what it is, no idea what he is going to question him about, all he has done is point to something without reading it. The witness is the only one who saw it. I don't know if it is objectionable or not and I can't and the witness is going to be asked a question about it.

"MR. BRICE: I will give Mr. Kelley plenty of opportunity to object, Your Honor, when I ask my question.

"MR. KELLEY: He may be pointing at something that says what did so and so, say, and he points at it, and the witness reads the answer, and it is improper, I don't know.

"MR. BRICE: I assure the Court—

"THE COURT: Counsel, at this point the Court doesn't know what he is going to ask or what he is going to do.

"MR. BRICE: Thank you, Your Honor.

"THE COURT: I don't know how to rule on your objection.

"MR. KELLEY: Let's see what he asks.

"MR. BRICE: Go ahead and read the first paragraph.

"MR. KELLEY: Now—

"MR. BRICE: To yourself.

"MR. KELLEY: All right.

"A Okay.

"Q (By Mr. Brice) Now, Johnnie, it has been quite a long while since this accident occurred hasn't it?"

It will be observed after some colloquy appellant's counsel said "Let's see what he asks." This was in effect agreeing to withdraw his objection for the moment, or at least to postpone it until after the question was propounded. But as it turned out no question was ever propounded with reference to the statement. Appellee's next question changed the subject. No objection was made by appellant to any of the succeeding questions. The record does not reflect error. Certainly it does not reflect reversible error under Rule 434, T.R.C.P. Appellant's tenth point is overruled.

In his eleventh point appellant says that the Court permitted counsel for appellee to infer that counsel for appellant was guilty of subornation of perjury.

The record shows that attorney for appellant wrote a letter to Ralph H. Snyder, the Safety Engineer of Oklahoma City, in which letter certain data was furnished to Snyder and appellant's version of the accident was briefly outlined. Snyder's analysis was requested.

An example of the type of questions of which appellant complains is as follows:

"Q Before you gave your opinion did you make any inquiry whatsoever into any of these facts?

"A No, and I can tell you why.

"THE COURT: Just answer the question, sir.

"A I did not.

"Q You already knew, didn't you, and you knew darn well that what Mr. Kelley was looking for was somebody to testify that Stevens was driving, that Schafer was in the back seat, and that Farris was in the back seat, you knew that when you gave your testimony?

"MR. KELLEY: If the Court please, I object to that, because it is an inference about my intentions and my intentions as set forth in that letter and I stand by it."

Before the witness could answer objection was made by appellant's attorney. The witness did not answer the question.

The situation does not present error. Appellee's counsel was obviously attacking the credibility of the witness, as he had a right to do. We do not think that the question inferred that appellant's counsel was guilty of subornation of perjury. His letter simply presented appellant's version of the accident, as appellant no doubt told it to his attorney, and as he testified, and as other witnesses in part testified during the trial. In addition the letter described the position of the car, the tree, and the positions of the three occupants of the car, etc., following the accident as testified to by several witnesses. The letter did not try to tell Snyder what conclusions he should reach, just as the usual hypothetical question propounded by an attorney does not try to dictate the answer of an expert witness, or convict the questioner of subornation of perjury. Snyder was an experienced witness who by his own testimony was a veteran of many court trials. His cross-examination was at times vigorous, but we do not believe it was subject to the criticism levelled at it by appellant and his counsel. Once more we must hold that any error appearing in this connection, if there was error, was harmless under Rule 434, T.R.C.P. Appellant's eleventh point is overruled.

We pause here to state that appellant's attorneys and the firm of attorneys with whom they are associated enjoy a very good reputation indeed in the legal profession and are highly respected for their integrity and ability.

In his twelfth point appellant alleges error of the court in sustaining appellee's objection to testimony of appellant's witness, Mrs. Plyler, concerning some dogs, then later allowing appellee, over ap-

486

pellant's objection, to question Mrs. Plyler about the same subject.

During the course of his testimony appellant had stated that the purpose of the trip was to see Stevens' hunting dogs. Mrs. Plyler testified that she arrived on the scene a short time after the accident. After Schafer regained consciousness she talked to him. Counsel asked her this question: "Do you remember * * * whether or not he said anything to you about dogs or anything of that nature?" At this juncture counsel for appellee made objection. The jury was retired and in the absence of the jury the witness testified as follows: "I asked him if he had a wife, and I asked him if he had a family, and he answered, yes, and he led me to believe he had a large family, I mean by large, at least over two children, and he told me something about dogs after that. * * * Which I assumed he had to do with his home, because I was trying to make him talk about his home. * * * Q. Did he tell you he had a wife, and he had a family, and he had a dog, or was that your understanding? A. That was my understanding. I asked the question to the man, if he had a wife, and family, all in one statement, to try to get the man at ease, and I didn't think anything about the dogs."

Thereafter during cross-examination by appellee's counsel the witness was questioned about the dogs. Counsel for appellant objected as follows:

"MR. KELLEY: Now, if the Court please, if he is withdrawing his objection to that question, and the witness' answer, I would like to have the record played back to show the jury what the witness' answers were to the question so they will have the direct examination in mind before counsel makes his cross examination on that particular point.

"THE COURT: Request denied. * * *

"MR. KELLEY: Now, then, I would like to object to his going into that because he has objected to my going into it, and I therefore object to his going into it.

"THE COURT: Overrule it."

The witness then testified substantially the same as she had in the absence of the jury.

The effect of appellee's counsel in cross-examining the witness about the dogs was to waive his previous objection, which he had a right to do. Of course, this opened the subject for appellant on redirect examination to go into the subject in greater detail if he chose. Counsel did thereafter question the witness on redirect examination, but he chose not to ask any questions about the dogs. Under the circumstances the situation does not present error, certainly not reversible error under Rule 434, T.R.C.P. Appellant's twelfth point is overruled.

Appellant's thirteenth point is that the cumulative effect of all the errors shown in the record taken together requires a reversal of the case, citing Scoggins v. Curtiss & Taylor, 148 Tex. 15, 219 S.W.2d 451.

We do not agree with appellant. We have carefully studied the whole record and all of appellant's points on appeal. We have concluded none of the points considered separately presents reversible error, nor do they do so when considered together.

As we have heretofore stated, our sustaining of appellant's fifth point on appeal is not decisive of the case. The evidence was insufficient to support the jury's verdict that appellant operated the car with heedless and reckless disregard of the rights of others. But Stevens was not a guest within the meaning of Art. 6701b. Consequently appellee had to prove only ordinary negligence. There is no question that the evidence and the jury verdict established ordinary negligence on appellant's part.

The judgment of the trial court is affirmed.

## ON MOTION FOR REHEARING

In his motion for rehearing appellant insists that we erred in our original opinion in holding that the failure to join as parties the parents of Thomas H. Stevens was not such fundamental error as to require the reversal of the judgment of the trial court.

Appellant says that the decisions upon which we have relied do not hold that in determining the existence of fundamental error the courts will not look into the statement of facts. What they hold, according to appellant, is that fundamental error will not be found if to do so requires the appellate court to *weigh* the evidence. Appellant's position here is that since the fact relied upon in this case appears *uncontroverted* in the statement of facts, the court may look to the statement of facts to determine the existence of fundamental error.

Among the cases cited and quoted by appellant in his brief in support of his contention are East Line & Red River R. R. Co. v. Culberson, 68 Tex. 664, 5 S.W. 820 (1887); Ft. Worth & D. C. R. R. Co. v. Wilson, 85 Tex. 516, 22 S.W. 578 (1893); San Antonio & A. P. R. R. Co. v. Mertink, 101 Tex. 165, 105 S.W. 485 (1907); San Antonio Portland Cement Co. v. Gschwender, 191 S.W. 599 (Tex.Civ.App.1917); St. Louis Southwestern Ry. Co. of Texas v. Anderson, 206 S.W. 696 (Tex.Civ.App. 1918); Galveston-Houston Electric R. R. Co. v. Reinle, 264 S.W. 783 (Tex.Civ.App. 1924); Universal Transport & Distributing Co. v. Cantu, 84 S.W.2d 327 (Tex.Civ. App.1935); Ramsey v. Dunlop, 146 Tex. 196, 205 S.W.2d 979 (1947); Tex-Jersey Oil Corp. v. Beck, 157 Tex. 541, 305 S.W.2d 162, 68 A.L.R.2d 1062 (1957); and Webb v. Huffman, 320 S.W.2d 893 (Tex.Civ.App. 1959).

Some of the above cited cases do use the phrase "examine and weigh" the evidence, or similar phrases. The Cantu case, supra, refers to the "undisputed evidence". In the Culberson, Wilson, Mertink, Gschwender and Reinle cases, supra, the matter of non-joinder of parties was brought to the attention of the trial court in the motion for new trial, or otherwise, consequently the question of fundamental error was not in any of the cases.

Webb v. Huffman, supra, apparently supports appellant's contention, though the opinion does not disclose whether complaint was made in the trial court. However, the Amarillo Court of Civil Appeals, in reversing the trial court's judgment, also sustained points of error which had been preserved by proper assignments in the trial court. Writ of Error was refused n. r. e., therefore we cannot know whether our Supreme Court approved the holding as to fundamental error.

Appellee, on the other hand, vigorously contends that we were correct in our original opinion when we held that we may not look into the statement of facts to discover fundamental error. In support of this view we think that authorities may properly be cited as follows: Texas & Pacific Ry. Co. v. Lilly, 118 Tex. 644, 23 S.W.2d 697; White v. Glengarry Oil Co., 137 Tex. 626, 156 S. W.2d 523; Insurors Indemnity & Ins. Co. v. Associated Ind. Corp. et al., 139 Tex. 286, 162 S.W.2d 666; City of Santa Anna v. Leach, 173 S.W.2d 193 (Tex.Civ.App. 1943); Ramsey v. Dunlop, 146 Tex. 196, 205 S.W.2d 979 (1947); Lane v. Fair Stores, Inc., 150 Tex. 566, 243 S.W.2d 683 (1951); Krottinger v. Marchand, 252 S.W.2d 217 (Tex.Civ.App.1952); ICT Ins. Co. v. Gunn, 294 S.W.2d 435 (Tex.Civ.App.1956); McCauley v. Consolidated Underwriters, 157 Tex. 475, 304 S.W.2d 265 (1957); Palmer v. Honea, 324 S.W.2d 929 (Tex.Civ.App. 1959); 29 Tex.Law Rev. 369; 38 Tex.Law Rev. 538, 541.

It has often been held even since the repeal of Art. 1837, V.A.C.S. that we are authorized to consider errors which have been assigned, or which are "apparent upon the face of the record", though Rule 374, T.R.C.P. does not expressly include the quoted phrase. What is the meaning of "Record" as so used? Our Supreme Court has definitely held that the "record" for pur-

poses of considering fundamental error does not include the statement of facts. Texas & P[acific] Ry. Co. v. Lilly, 118 Tex. 644, 23 S.W.2d 697, 698. (Opinion adopted by the Supreme Court). We quote from the opinion in the last named case:

"The statute does not mean that any error which can be ascertained by looking into the record, including the evidence, will constitute that error 'apparent upon the face of the record.' This would be to make all errors fundamental errors, for every error may be made to appear by an examination of the entire record. The language of the statute, therefore, is used in a more restricted sense. The statute has been subsequently construed in a negative way so as to exclude an examination by the court of the statement of facts to determine whether or not there be any evidence to support the judgment. Ford & Damon v. Flewellen (Tex. Com.App.) 276 S.W. 903; Blackmon v. Trail (Tex.Com.App.) 12 S.W.2d 967. The statute does not define what is meant by 'the record,' but in the negative way just noticed it has been construed to exclude that part of the record which supplies the facts upon which the court bases his judgment.

"The 'record' as here used evidently means, as at common law, those proceedings which lie at the foundation of the court's power to render the judgment, such as the petition, the citation, the verdict, and the judgment proper. *It does not include instruments not thus fundamental, such as bills of exceptions, statement of facts, and the like.*" (Emphasis ours).

Similar holdings are made in other cases. In White v. Glengarry Oil Co. et al., 137 Tex. 626, 156 S.W.2d 523, 524, (opinion adopted by Supreme Court) it is said:

"Furthermore, without resorting to the statement of facts, the Court of Civil Appeals could not have discovered that the evidence conclusively es-

tablished the limitation plea of these last named defendants; hence, the situation did not present a fundamental error or 'error in law apparent on the face of the record.' "

In Insurors Ind. & Ins. Co. v. Associated Ind. Corp. et al., 139 Tex. 286, 162 S.W.2d 666, 670, our Supreme Court said:

"If it requires an examination of the statement of facts to disclose error, no question of fundamental error is presented. Moore v. Krenex, Tex. Com.App., 39 S.W.2d 828; Texas & P[ac]. Ry. Co. v. Lilly, 118 Tex. 644, 23 S.W.2d 697; Davenport v. Taylor County Tuberculosis Ass'n., Tex.Civ. App., 72 S.W.2d 407; Horton v. Hill, Tex.Civ.App., 95 S.W.2d 751; Traders & General Ins. Co. v. Patton, Tex.Civ. App., 92 S.W.2d 1083; 3 Tex.Jur., pp. 808, 809, 810; Tex.Jur.Sup., pp. 232, 233. These authorities could be greatly extended, but they are sufficient to show that the rule here announced is the settled law. From what we have said it is evident that we cannot review the question as to whether a trial court committed error in entering judgment non obstante veredicto for Insurors Indemnity and Insurance Company."

In Ramsey v. Dunlop, 146 Tex. 196, 205 S.W.2d 979, 984, Chief Justice Alexander of our Supreme Court, in a concurring opinion said:

"I am in accord with the judgment rendered in this case, but I desire to make it clear that in my opinion the rule which permits a Court of Civil Appeals to reverse a judgment for unassigned error must be given a much more strict and narrow interpretation than was permissible prior to the adoption of the present rules. * * * It is my opinion that the Court of Civil Appeals is authorized to reverse a judgment of the trial court upon an unassigned error only when it involves a matter of public interest and when the record affirmatively and con-

clusively shows that the appellee was not entitled to recover, where the record affirmatively shows that the court rendering the judgment was without jurisdiction over the subject matter."

Lane v. The Fair Stores, Inc., 150 Tex. 566, 243 S.W.2d 683, 685 was a case in which the Supreme Court refused to consider a statement of facts which had been filed late. However, the court also made this statement:

"If it requires an examination of the statement of facts to reveal error, then it is not fundamental error."

In Krottinger v. Marchand, 252 S.W.2d 217, 218 (Tex.Civ.App.1952) it is said:

"Before a court may reverse a case based upon fundamental error, it must make its finding solely from an examination of the pleadings, the judgment and other records of the case, *without the assistance of the statement of facts*." (Emphasis ours.)

The views expressed by Chief Justice Alexander in his concurring opinion in Ramsey v. Dunlop, supra, are not part of the majority opinion in that case. However in a later Per Curiam opinion our Supreme Court has gone a long way toward embracing the views of the former Chief Justice. We quote from the opinion in McCauley v. Consolidated Underwriters, 157 Tex. 475, 304 S.W.2d 265, 266 (1957):

"Since the Rules make no provision for consideration of errors apparent on the face of the record, the concept of fundamental error is much narrower than it was under Art. 1837, and many errors formerly treated as fundamental may not be so regarded now. The majority opinion in the Ramsey case does not attempt to give an all-inclusive definition of the term, but holds that an error which directly and adversely affects the interest of the public generally, as that interest is declared by the statutes or Constitution of our State, is fundamental. When the record

ord affirmatively and conclusively shows that the court rendering the judgment was without jurisdiction of the subject matter, the error will also be regarded as fundamental." .

It is to be noted that even prior to the adoption of the Rules of Civil Procedure in 1941 it was held that we were not to refer to the statement of facts in considering alleged fundamental error. In view of the "much narrower" concept now controlling, we must adhere to our opinion that we may not look into the statement of facts in the instant case to discover fundamental error.

Can we say that the record before us presents a jurisdictional question? Appellant says that it does and points to the strong language used by Justice Gaines in East Line & Red River R. Co. v. Culberson, 68 Tex. 664, 5 S.W. 820. However, in that case the defendant raised the question of nonjoinder in the trial court by a motion in arrest of judgment and in a motion for new trial, so fundamental error was not involved.

We do not agree with appellant. In the later case of Texas & Pac. Ry. Co. v. Lilly, 23 S.W.2d 697, 699 (Opinion adopted by Supreme Court) it is said:

"There is a vast difference between jurisdiction and the exercise of jurisdiction. The power to hear and decide, which is jurisdiction, includes the power to decide wrong as well as right. In this connection it may be conceded that the judgment awarding the item of costs against the partially successful appellant to the county court was wrong and in violation of the statute. Nevertheless the county court had the power, in the sense of jurisdiction, to render the judgment he did."

In Missouri Pac. Ry. Co. v. Henry, 75 Tex. 220, 12 S.W. 828, 829 there is this statement:

"It has been decided that, *where the objection for non-joinder is made at*

*proper time,* the suit should be abated until proper parties are joined in the action, either as actual parties, or included by proper allegations in the benefit of the action, ( [Houston & Texas C.] Railway Co. v. Moore, 49 Tex. 31; [Galveston, H. & S. A.] Railway Co. v. Le Gierse, 51 Tex. 189.)" (Emphasis ours).

The view above expressed finds support in an opinion of this Court. In St. Louis Southwestern Ry. Co. of Texas v. Anderson, Tex.Civ.App., 206 S.W. 696, 698, Justice Talbot, speaking for the Court, said:

"A fundamental error is one apparent upon the face of the record. The affidavits referred to constitute no part of the record in this cause, and the fact, if it be a fact, that the deceased, John Anderson, left his father surviving him not appearing from the record, the error charged and sought here to be assigned is not fundamental. *The matter called to the attention of the court in the assignment is not jurisdictional, but a nonjoinder of parties,* * * *. Nor did appellant, by plea in abatement or by any form of objection whatever, complain of the nonjoinder of the father, and suggest or urge that the suit be arrested until he was made a party or included by proper averments in the benefit of the action." (Emphasis ours.)

In the case now before us appellant did not, by plea in abatement, or by any form of objection whatever complain in the trial court of the nonjoinder of the parents of Thomas H. Stevens.

Tex-Jersey Oil Corp. v. Beck, 157 Tex. 541, 305 S.W.2d 162, 165, 68 A.L.R.2d 1062 was a case in which there was no mention in the pleadings or the evidence of the existence or a non-existence of the decedent's father. Justice Calvert, writing the opinion then went on to say:

"The question was not raised by plea in abatement, special exception, or other pleading or motion in the trial court."

Here the 101st District Court of Dallas County, Texas, certainly had jurisdiction of the subject matter of this suit. Perhaps, as appellant claims there was a non-joinder of parties. But as we see it the non-joinder of parties, not disclosed on the face of the record, is not a fatal jurisdictional defect as contemplated by our Supreme Court in considering fundamental error.

▆ Lastly, this case is not one of general public interest as contemplated in our Supreme Court holdings in regard to fundamental error. In Ramsey v. Dunlop, supra, an election contest was involved—certainly a matter of public interest. It is true that we are concerned here with the proper application of a statute. Art. 4675, V.A.C.S. In a broad sense all statutes and their proper application are matters of public interest. But we believe that in the limited sense intended by our Supreme Court with reference to fundamental error, this is not a case of "general public interest" as was the Ramsey case, for instance. The case of Texas & Pac. Ry. Co. v. Lilly, supra, also involved the application of a statute, but a claim of fundamental error was overruled.

In his motion for rehearing appellant again complains that special issue No. 2 was not submitted in proper form. Since we did not in our original opinion quote the issue in full we do so now:

"SPECIAL ISSUE NO. 2. Do you find from a preponderance of the evidence that the motivating influence of Defendant, Carl B. Schafer, in transporting Thomas H. Stevens in the automobile *at the time and on the occasion of the collision in question* was the furtherance of a business deal in which the defendant, Carl B. Schafer, had the expectation of tangible benefit of pecuniary nature. Answer "yes" or "no" ANSWER: YES." (Emphasis ours.)

Among other things appellant charges the issue as drawn does not restrict the jury's consideration to the proper time element with reference to when "the furtherance of a business deal" was involved. Appellant argues that part of the time Stevens and appellant were together they were not engaged in "the furtherance of a business deal," but were merely engaged in a social meeting, during which latter time the Guest Statute would apply.

We do not agree with appellant. The phrase "at the time and on the occasion of the collision in question" clearly confines the jury to a consideration of the purpose of their being together at the time of the fatal collision.

We have carefully considered all the points raised in appellant's motion for rehearing. We are of the opinion that all of them should be overruled.

The motion for rehearing is overruled.